**CHRISTIAN APPALACHIAN PROJECT, INC., et al., Appellant,**

v.

**Clinton BERRY, Adm'r of the Estate of Donny Berry, Deceased, Appellee.**

Court of Appeals of Kentucky.

Nov. 17, 1972.

A. R. Burnam, III, Clay Shackelford, Shackelford, Burnam & Thompson, Richmond, for appellant.

Carl G. Cunnagan, McKee, for appellee.

REED, Justice.

This is a wrongful death action in which the plaintiff, the personal representative of Donny Berry, recovered judgment for $15,952.85 against the defendant, Christian Appalachian Project, Inc., (hereinafter designated C.A.P.). C.A.P. appeals from this judgment, which was entered in accordance with a jury verdict, on two grounds: first, that there was no evidence of negligence on its part, and second, that even though it be conceded that there was sufficient evidence to permit a jury finding of negligence, contributory negligence by the decedent was so clearly established that recovery was not legally permissible.

C.A.P. is a Kentucky corporation formed by Father Ralph Beiting, a Roman Catholic priest. The purpose of C.A.P. is to furnish employment in Jackson County, Kentucky, and afford recreational facilities for public use. In August 1967, C.A.P. was operating a recreational lake located at Camp Andrew Jackson in Jackson County. Title to the realty on which the lake was located was held in the name of the Roman Catholic Bishop of the Diocese of Covington.

On August 13, 1967, Donny Berry, the decedent, who would have been 19 years old on August 22, 1967, and was an adult under Kentucky law, came to the lake with several friends. Two of the other young men rented a canoe and paddled off. They were furnished life jackets and instructed to wear them by Cynthia Goodwin, an employee of C.A.P. Shortly thereafter, Berry first rented a flat-bottom boat, then exchanged it for a canoe and paddled off. At a point out of sight of the boat dock, the canoe tipped over and Berry was drowned.

It is conceded that Berry paid a fee to rent the canoe. There is conflicting evidence concerning whether Cynthia Goodwin, the C.A.P. employee in charge of the boats, furnished him a life jacket. She testified that he refused a life jacket but that she, nevertheless, placed one in the bottom of the boat. Other witnesses who were present, however, testified that she did not furnish Berry a life jacket.

Plaintiff argues that Cynthia Goodwin knew that a canoe was more prone to capsize than other types of boats, and since Berry knew nothing about canoes, she had a duty to warn him of the possibility of danger. Plaintiff also points out that no lifeguard was present.

The defendant contends that it had no duty to furnish a life preserver, and, somewhat alternatively, that Berry had as much responsibility to request a life preserver as did the defendant to keep one available. The defendant's principal thrust, however, is the proposition that if Berry was as inexperienced as plaintiff's evidence sought to establish, then it was manifestly unreasonable conduct on his part to rent a canoe without a life preserver and paddle off on his own.

We do not attach significance to the failure to provide a lifeguard in the circumstances presented. In the operation of a recreational facility for adult boating on a lake, we find no authority, nor has plaintiff furnished us with any, that a lifeguard is a practical or feasible precaution required of the operator of such a facility. We similarly regard plaintiff's argument that Cynthia Goodwin had a duty to warn Berry under the circumstances presented in this case. Berry was an adult and had full opportunity to observe the conditions present. There is no evidence that Cynthia Goodwin knew or should have known of Berry's claimed subjective inexperience. "No reasonable adult ventures upon waters in a rowboat (much less a canoe) without some apprehension of danger that it may capsize due to a number of reasons." (Parenthetical expression supplied). See Alberti's Administratrix v. Nash, Ky., 282 S.W.2d 853 (1955). Thus, we conclude, so far as defendant's failure to warn was concerned, there was no submissible issue for the jury to consider.

The only possible failure to exercise the degree of care required in the circumstances concerns the issue of failure to furnish a life preserver. In the Alberti case, which was an action for wrongful death that occurred when a rented fishing boat capsized in Kentucky Lake, the court said that our statutes as they then existed did not impose upon the defendant, who was there regarded as a bailor for hire, the duty of equipping the fishing boat with life preservers. Therefore, according to the court, the duty was on the bailee in the exercise of ordinary care for his own safety to observe whether or not the boat contained life preservers as much as it was upon the bailor to furnish life preservers. Hence, the court concluded that as the bailee had not asked for life preservers in the instance presented, it could not be said with reason that the bailor breached a duty toward him in failing to so equip the boat.

Plaintiff argues that an administrative regulation of the Department of Public Safety required a life preserver to be furnished on the occasion in question. This regulation, however, was neither pleaded nor introduced in evidence. Hence, it would be necessary for us to take judicial notice of it as evidence of the existence of such a requirement. KRS 13.105 undertakes to empower the courts to take judicial notice of any administrative regulation filed under the provisions of KRS 13.080 to 13.135 after the regulation has become effective. KRS 13.085(2) requires that each regulation include a citation of the authority pursuant to which it, or any part of it, was adopted. Boat Regulation No. 17 of the Department of Public Safety, on which plaintiff relied, recited that it was promulgated pursuant to the authority of KRS 325.320. That statute, however, concerns itself with partnerships in the public accountant profession. Hence, it would appear that, strictly speaking, we cannot take judicial notice of the provisions of Boat Regulation No. 17. Its existence and its provisions would have to be properly established at least by pleading or in proper circumstances by evidence.

Assuming arguendo, however, that the regulation existed and provided that defendant had a duty to furnish a life preserver on the occasion in question, we are of the opinion that decedent's conduct on the occasion in question was so manifestly unreasonable under the circumstances as

to bar the plaintiff's recovery as a matter of law. Contributory negligence may consist "not only in a failure to discover or appreciate a risk which would be apparent to a reasonable man, or an inadvertent mistake in dealing with it, but also in an intentional exposure to a danger of which the plaintiff is aware." Prosser, Law of Torts, 4th Ed., Ch. 11, p. 424.

■ The reasonableness of the decedent's conduct must be determined by balancing the risk against the value which the law attaches to the advantages which he is seeking. Where the decedent's conduct clearly involves a risk out of all proportions to its value, such conduct must be regarded as contributory negligence as a matter of law. The defendant did not undertake to furnish a nonsinkable boat.

There was no evidence that the boat was in an unsound condition or that it was not the usual type of canoe. No abnormal condition of the water was claimed. There was conflicting evidence concerning whether the deceased could swim, but, at best, he was only an inexperienced swimmer. Therefore, under the basic reasoning of the Alberti case, and applying the common experience of adults who choose to engage in recreational activities involving the use of canoes, we must regard the conduct of the decedent in this case as manifestly unreasonable conduct in encountering a danger that was obvious to any reasonable person under the circumstances claimed to exist by the plaintiff's evidence.

We hold that the trial court should have sustained the defendant's motion for a directed verdict and, having failed to do so, should have granted defendant's motion for a judgment n. o. v.

The judgment is reversed with directions to dismiss the action.

All concur.