**William C. PRATER and Magoffin County Fiscal Court, Appellants,**

v.

**Alma ARNETT, Administratrix of the Estate of Paul Edward Arnett, Deceased, Appellee.**

Court of Appeals of Kentucky.

April 1, 1983.

Richard W. Martin, Johnson, Dunnigan & Martin, Ashland, for appellants.

David Lemaster, Paintsville, for appellee.

Before GUDGEL, McDONALD and MILLER, JJ.

MILLER, Judge.

This is an appeal under Kentucky's Wrongful Death Statute KRS 411.130. (Often referred to by the trial bar as the Campbell Statute, for reason that Lord Campbell's Act passed in England in 1846, abrogated the Common Law rule that no action lay for the wrongful death of another). There were two jury verdicts. In the first trial, the jury fixed liability and damages at Twenty-Five Thousand ($25,000) Dollars. Upon plaintiff's motion under CR 59.01, the trial judge set aside the damage portion and assigned the case for a second trial on damages only. The second trial ended in a jury verdict of Seventy-Five Thousand ($75,000) Dollars. The trial judge entered judgment upon the second verdict and the defendants (appellants) bring this appeal. Appellants assert that all recovery was barred by contributory negligence as a matter of law and that they were entitled to a "directed verdict." Alternatively, appellants ask that we reverse and order reinstatement of the judgment on the first verdict.

We hold the appellants were not entitled to a directed verdict; nor did the trial judge abuse his discretion in setting aside the first jury verdict and assigning the case for a new trial upon the damage issue.

An examination of the facts is essential. The evidence established that the plaintiff's (appellee's) intestate Paul Edward Arnett was an eighteen-year-old male, graduate of Magoffin County High School. His IQ was well above average. After high school graduation in 1979, he worked as a construction laborer earning about Six ($6) Dollars per hour.

Paul Edward Arnett and Deputy Sheriff William C. Prater were good friends. Paul Edward Arnett visited Deputy Prater several times per week at the latter's house and had ridden with him before, but apparently not in his police cruiser. On the day in question, Deputy Prater along with his brother-in-law, Anthony Howard (also a deputy sheriff of Magoffin County), were at Prater's home near Salyersville doing maintenance work upon Prater's 1956 Ford 500 police cruiser owned by Magoffin County. It was in the afternoon of a spring day, April 29, 1980.

Deputy Prater and Anthony Howard worked on the Ford cruiser, in Prater's yard, attending to such things as installation of new rotaries, brakes, disc pads, motor and gears on the emergency lights and siren system. Some time during the afternoon Paul Edward Arnett arrived with a carburetor for which he had made a deal with Deputy Prater; Paul Edward Arnett installed the carburetor on the cruiser.

After so servicing Deputy Prater's cruiser, it was getting late in the afternoon. Anthony Howard gathered up some tools and was placing them in the garage. Deputy Prater walked toward his house for the purpose of taking a shower and changing into his sheriff's uniform for the rapidly approaching evening work shift. Paul Edward Arnett stood near the cruiser.

Just as Deputy Prater was entering his house, his attention was attracted by two cars apparently racing on the highway. He decided to give chase in the Ford cruiser. He, in some manner, asked Anthony Howard if he wanted to go but fortuitously, the latter declined. Here the evidence is vague and confused. It is not clear whether Paul Edward Arnett was asked to go on the ride or not, but it is clear that when Deputy Prater left the yard, Paul Edward Arnett was his passenger. The vagueness arises because there is no direct testimony as to whether Paul Edward Arnett was invited to go on the ride or went along of his own volition. Deputy Prater, somewhat incredulously, testified "after I got on the road I looked over and Paul Edward Arnett was in the car."

Whatever may have been the circumstances under which Paul Edward Arnett entered the vehicle, it is a fact that Deputy Prater was under the wheel of the car, with Paul Edward Arnett as his passenger while giving chase to the speeders. Since Paul Edward Arnett lost his life on this fateful journey, from this point on we have only the evidence of Deputy Prater and several other witnesses who chanced to see the fatal accident before and after it occurred. Deputy Prater testified that he operated his cruiser at a speed of approximately 60 miles per hour and was unsuccessful in overtaking the speeders. He attributed his failure to the fact that the cruiser was "sputtering through the carburetor" and "did not accelerate right." He testified that he gave up the chase after a mile and one half or two and backed off the road to turn around. At this point he observed one of the speeders "coming back down the road." Deputy Prater testified that he pulled out in pursuit and "kicked the cruiser down" but it failed to respond. He stated that he was going around the Elsie Conley curve at about 55 or 60 miles per hour when he met two oncoming pickup trucks both of which were "over on my side." He further testified that, "I laid over in the grass and when I did I hit this driveway that came down from Elsie Conley Cemetery and the road was wet and mud and water on it and my car turned sideways and slid into the tree."

The two pickup truck drivers were called as witnesses. One of them, Edgar Wireman, stated that Deputy Prater's vehicle was going "at a pretty good speed." The other driver, Kenny Isaac, said he was unable to fix the speed of Deputy Prater's vehicle. Both Wireman and Isaac testified that the Prater vehicle was out of control and sliding into their lane. Each of them denied that they were on the wrong side of the road.

Shirley Spurlock, a person who lived nearby, stated that she was sitting in her lounge chair in her front door and heard something that sounded like "a jet plane or something." She estimated that the Prater vehicle's speed to be between 90–100 miles per hour. She further stated that there were no flashing lights or siren.

Rounding the Elsie Conley curve, Deputy Prater's vehicle went out of control striking a tree head-on. Deputy Prater was terribly injured and Paul Edward Arnett lost his life.

## DIRECTED VERDICT ISSUE

Appellants urge that contributory negligence should be imposed upon Paul Edward Arnett as a matter of law. We think it should not be so imposed. On the contrary, this is a classic case for jury determination. Jurors are the fact finders unless the evidence is so one-sided that reasonable minds would not differ as to the proper outcome of the matter in issue.

Contributory negligence is an affirmative defense which must be pleaded by the defendant, and the burden of proof borne by him. Civil Rule 8.03; *Howard v. Howard*, Ky.App., 607 S.W.2d 119 (1980). It is a bar whereby the defendant can escape imposition of negligent liability by showing that the plaintiff himself failed to exercise the requisite standard of care for his own safety. Like the primary negligence of the defendant, it is a question that generally falls within the province of the jury. The familiar rule is that a party seeking a directed verdict on an issue suf-

fers a bias against him, and the evidence will be construed in a light most favorable to the opposing party. *See Covington v. Friend Tractor and Motor Company, Inc.,* Ky.App., 547 S.W.2d 771 (1977).

Whether or not Paul Edward Arnett was invited to go along—is of minor significance. Nevertheless, he was there as a passenger. His presence was tolerated, if not invited. He was not riding with an inexperienced driver, but with a trained law enforcement official. The wisdom of getting into a car with a police officer to apprehend a speeding motorist may cause reasonable minds to disagree. Chasing and overtaking a speeding motorist is commonplace in this day and time. The danger and risks involved may be little more than that incurred by millions of passengers every day. Speed alone is not so inherently dangerous as to make one who subjects himself to it negligent as a matter of law. It is only a relevant circumstance. The danger in it depends upon how it is handled. The most common use of an automobile, to which we are all inextricably woven, entails close and constant proximity to death. Time and space are our only saviors. The jury was entitled to consider, as probably they did, the propensity of youth: the desire to be involved and other relevant circumstances such as confidence naturally exuded by a law enforcement official; also, their prior personal relationship and perhaps confidence in Deputy Prater's driving skills. Indeed they were not going racing, but just to apprehend a motorist. Nor was he joy riding over a dangerous road with an inexperienced driver. *Cf. Cassidy v. Quisenberry,* Ky., 346 S.W.2d 304 (1961).

Further, reasonable minds may have differed as to whether the brief chase had ended and, in fact, the collision with the tree was actually caused, in part, by the oncoming motorists. Or, perhaps the chief factor in causing the collision was nothing but the mud and water on the roadway at a bad place on the curve. A jury need not believe any particular witness, in whole or in part. *See Webb Transfer Lines, Inc. v. Taylor,* Ky., 439 S.W.2d 88 (1968).

The appellants cite a host of passenger cases in support of their position. But, we believe, the passenger cases imposing contributory negligence, as a matter of law, upon the passenger have certain salient features. They are cases covering a considerable journey where the reckless nature of the driver grows progressively worse. For example, a "drinking driver spree" where the driver continues to consume alcohol ever lessening his ability to drive.

Further, a reckless journey interrupted by stops where there is ample opportunity for the passenger to "alight" and terminate his exposure to the risk. Nor, upon the evidence in this case, was there a reasonable opportunity, considering the short time involved for Paul Edward Arnett to alight at the "turn around," he might just as reasonably have assumed the chase was over. Or, having had no problems to that point in time, he may have been fortified by confidence in Deputy Prater's driving.

*Christian v. Berry,* Ky., 487 S.W.2d 951 (1972), is not persuasive in this case. It was a canoe "capsized" case. The risk involved was "not having a life jacket." It was observed that the decedent, nineteen years of age, should, as a matter of law, have appreciated the danger in canoeing without a life jacket. We believe that canoeing is substantially different from the case of an automobile passenger, who of necessity, places his life in the hands of the driver. However careful an automobile driver is, it must be observed that to him and to his passengers death is but an instant away. As Americans, we have learned to accept that fact, and our only protection as a passenger is reliance upon the skills of the driver.

Here we should observe that the instructions on contributory negligence succinctly brought to the jury's attention the focal point of consideration. While we neither approve or disapprove the instructions, it is worth noting that the trial judge was extremely careful in pointing out the duties of Paul Edward Arnett in regard to his own safety.

■ All evidence considered, there are a host of facts in this case which could have led reasonable minds to differ; it was proper to submit the facts to the jury on the issue of contributory negligence.

## NEW TRIAL ON DAMAGE ISSUE

After the first trial, appellee moved for a new trial upon the issue of damages. He assigned, as his basis, several of the grounds provided in CR 59.01. The net result of his dissatisfaction was, that the Twenty-Five Thousand ($25,000) Dollar verdict was inadequate. The motion was granted without findings and the second damage verdict is involved in this appeal.

■ It is no longer open to doubt that we have arrived at a point in time where a trial judge may, in his unabused discretion, properly set aside an award of damages as inadequate and order a new trial upon the issues of damage alone. *See Pratt v. Mountain Utilities Company, Inc.,* Ky., 594 S.W.2d 881 (1980). Upon reviewing the action of a trial judge in so doing, the appellate court no longer steps into the shoes of the trial court to inspect the actions of the jury from his perspective. Now, the appellate court reviews only the actions of the trial judge, in setting aside the verdict, to determine if his actions constituted an error of law. There is no error of law unless the trial judge is said to have abused his discretion and thereby rendered his decision clearly erroneous. Further, the action of the trial judge is presumptively correct and the appellate court will not hastily substitute its judgment for that of the trial judge, who monitored the trial and was able to grasp those inevitable intangibles which are inherent in the decision making process of our system. *See City of Louisville v. Allen,* Ky., 385 S.W.2d 179 (1964); *Louisville Memorial Gardens, Inc. v. Commonwealth of*

*Kentucky, Department of Highways,* Ky., 586 S.W.2d 716 (1979); *Pratt, supra.*

Here, we should observe that the decision of a disinterested jury, based upon documentary, real or physical evidence, and the spoken word, or a combination of same is, of necessity, a decision *one* step removed from reality. The trial judge, as an arbitrator, is involved in their decision. Civil Rule 59.01 assures him of that status. The appellate court's position in reviewing the action of the trial court in setting aside a verdict, calls for a decision *twice* removed from reality. It is a chasm that this Court cannot easily cross.

■ The record reflects that the proof of damages contained sufficient, relevant information concerning the life of decedent. There was ample evidence upon which to form a basis of decedent's earning capacity for his estate. The testimony of an economic expert is an acceptable way of proving damages to an estate in wrongful death. As indicated in *Adams v. Davis,* Ky.App., 578 S.W.2d 899 (1979), a jury is at liberty to place expert testimony in the proper perspective.

We note that the trial judge made no finding of facts to support his order granting a new trial. Such is not indispensable but should be done. *See City of Louisville, supra,* Footnote 1, page 180.

For the foregoing reasons the judgment of the circuit court is affirmed.

All concur.