**TURFWAY PARK RACING ASSOCIATION, Appellant,**

v.

**Leslie Michele GRIFFIN, Administratrix of the Estate of Thomas Griffin, and David B. Sloan, Ancillary Administrator of the Estate of Thomas Griffin, Appellees.**

No. 91–SC–062–DG.

Supreme Court of Kentucky.

June 4, 1992.

Rehearing Denied Sept. 24, 1992.

John David Cole, John F. Menefee, Cole Minton & Moore, Bowling Green, for appellant.

F. Thomas Conway, Louisville, David B. Sloan, Covington, Sam L. Anderson, Hot Springs, Ark., for appellees.

LAMBERT, Justice.

This Court granted discretionary review to determine whether a jury verdict of zero for destruction of a child's power to earn money was inadequate; and if so, whether on retrial the jury should be informed of such sums as were awarded to the decedent's estate pursuant to KRS 411.130, and to the parents for loss of affection and companionship pursuant to KRS 411.135.

Thomas Chase Griffin, a four-year-old child, fell to his death from a stairway at Turfway Park. Suit was brought by the administratrix of the child's estate for

wrongful death, and by Leslie Michele Griffin and William Sully Griffin, IV, the parents, for loss of affection and companionship. In its instructions the court authorized the jury to award damages to the parents on their individual claims and the total sum awarded was $375,000. The court also authorized the jury to award damages to the decedent's estate for medical expenses, funeral expenses and pain and suffering endured from the time of injury until death. For these items the jury returned verdicts totalling $62,831.27, with $50,000 of this being for pain and suffering. However, for destruction of the decedent's power to earn money, the jury returned a verdict of "$0.00" and its failure to award damages for this item forms the basis for this appeal.

After entry of judgment in accordance with the jury verdict, appellees moved for a new trial on the ground that the zero verdict for destruction of power to earn money was inadequate. CR 59.01(d). They contended that since the testimony of their economist, Dr. Michael Brookshire, fixed damages in excess of 1.5 million dollars, the verdict of zero for destruction of earning power was inadequate and inconsistent. The trial court overruled the motion.

Appellees appealed to the Court of Appeals from the final judgment. That Court framed the issue as whether the zero verdict was inadequate and answered in the affirmative. Despite its recognition that a jury is allowed considerable latitude in determining damages for the wrongful death of a child, on the authority of *Rice v. Rizk*, Ky., 453 S.W.2d 732 (1970), the Court held that the inference of some loss of earning power was sufficient to require an award of damages and a new trial was ordered "solely on the issue of damages, specifically the loss to the estate of the power to earn money." In a separate concurring opinion, Judge Gudgel, a member of the Court of Appeals panel which heard the appeal, expressed concern about a retrial on only the damage issue without informing the jury that appellees, individually, and as beneficiaries of the decedent's estate, had recovered in excess of $400,000 as a result of the first trial. Judge Gudgel

suggested that appellant should be entitled to apprise the jury on retrial of the damages previously awarded, but found no basis in our law for such a result. He speculated that "[i]n all probability upon retrial the new jury, acting in a vacuum, will award an additional significant sum for destruction of the decedent's power to earn money even though the first jury consciously chose to compensate the decedent's heirs through a combination of other means."

While the standard of review of orders denying motions for new trial on grounds of inadequacy of damages has not been presented as an issue on appeal as such, it is appropriate that we comment upon this point. Our recent decision in *Cooper v. Fultz*, Ky., 812 S.W.2d 497 (1991), laid to rest any confusion which previously existed with respect to such appellate review. We began by declining any review until the trial court had first considered the substance of the claim and quoted with approval from *Davis v. Graviss*, Ky., 672 S.W.2d 928 (1984), which described a CR 59.01 ruling as "a discretionary function assigned to the trial judge who has heard the witnesses firsthand and observed and viewed their demeanor and who has observed the jury throughout the trial." *Id.* at 932. We followed *Prater v. Arnett*, Ky.App., 648 S.W.2d 82 (1983), in which the appellate court was held to be precluded from stepping "into the shoes" of the trial court, and precluded from disturbing its ruling unless it was found to be clearly erroneous.

■ Our decision in *Cooper* amounts to a recognition that a proper ruling on a motion for new trial depends to a great extent upon factors which may not readily appear in an appellate record. Only if the appellate court concludes that the trial court's order was clearly erroneous may it reverse. With these principles in mind we will now review the evidence to determine whether the Court of Appeals exceeded the proper scope of review.

## I.

■ Appellant contends the Court of Appeals erroneously reversed the trial court's

order denying the motion for a new trial on the disputed damage issue. It maintains that the jury was entitled to reject the testimony of respondents' economist and properly find that the death of the four-year-old child did not result in damage to his estate by destruction of his power to earn money. Appellees maintain, on the other hand, that the Court of Appeals properly found clear error by the trial court's failure to grant a new trial when the jury did not return a verdict within the parameters of the evidence on damages provided by their expert.

At trial, appellees presented evidence from economist Dr. Brookshire who gave opinion testimony as to the damage sustained by the child's estate. Dr. Brookshire expressed opinions, based on a variety of favorable and unfavorable assumptions, including duration of life, educational attainment, employment, and economic participation. Taking into account all that could have happened to enhance or diminish the damage to the decedent's estate, the witness gave the jury a range of damages between 1 million and 3.1 million dollars.

Appellant chose not to present the testimony of an economist. Rather it chose to cross-examine Dr. Brookshire and attempt to make his assumptions appear unreasonable. The witness admitted that the decedent was analyzed as an economic machine which never lost a day or hour of work and was paid whether or not he worked. Whether the child would survive, become educated, work and participate were factors presented to the witness who then placed the child in a statistical class and expressed opinions based on that class. In sum, appellant attempted to poke holes in the testimony of Dr. Brookshire and create the impression that his testimony was exaggerated or incredible.

For its attack upon the opinion of the Court of Appeals, appellant places primary reliance upon a number of personal injury cases in which appellate courts of this Commonwealth affirmed judgments on jury verdicts which awarded zero for various claimed items of damage. *Spalding v.* *Shinkle,* Ky.App., 774 S.W.2d 465 (1989); *Davidson v. Vogler,* Ky., 507 S.W.2d 160 (1974); and *Hargett v. Dodson,* Ky.App., 597 S.W.2d 151 (1979). Quotations from these decisions are provided which include the view that the jury is not bound to accept the testimony of expert witnesses, award at least some amount, or compensate for particular items of damage. Likewise, appellees rely on *Hazelwood v. Beauchamp,* Ky.App., 766 S.W.2d 439 (1989), also a personal injury case, for the proposition that the jury is not free to disregard uncontroverted evidence of the nature of the accident itself and the medical procedures performed. While we have no quarrel with any of these decisions, we find them to be of little benefit here.

There is a fundamental and undeniable difference between personal injury cases and wrongful death cases. In the former, whether and to what extent a plaintiff has sustained injury may, in many cases, contain a measure of uncertainty, while in the latter, there is none. The death of a person results in an irrevocable cessation of possibility and what might be a reasonable analysis by the jury in an injury case simply has no application when death has occurred.

The use of economic expert witnesses in the trial of wrongful death cases is of relatively recent origin in Kentucky. Older Kentucky decisions make no mention of the testimony of such experts, but uniformly hold that it is unnecessary to submit evidence of the decedent's power to earn money to sustain the jury verdict for its destruction. In *Heskamp v. Bradshaw's Adm'r,* 294 Ky. 618, 172 S.W.2d 447 (1943), appellant contended that no evidence was offered to show that the estate sustained loss by the decedent's death. In response to this argument, the Court reviewed the decedent's personal and economic circumstances and held that "[f]ailure to furnish the jury with proof of the decedent's earning power will not prevent them from exercising their own judgment in the matter and determining the amount of damages the estate has suffered." 172 S.W.2d at 451. In a more recent decision, *City of*

*Louisville v. Stuckenborg,* Ky. 438 S.W.2d 94 (1968), which likewise contains no mention of expert testimony, the claim asserted was for the wrongful death of a prematurely born infant. Appellant contended that the award was excessive due to the absence of evidence as to the decedent's potential capacity or power to earn money. Rejecting this argument, the Court held that particularly in determining damages for the death of a premature infant, the jury must be allowed much latitude. Relying on *Heskamp v. Bradshaw's Adm'r, supra,* and cases cited therein, the Court held "in view of these cases, it was unnecessary to submit evidence of the decedent's power to earn money. The award is not considered excessive within the first blush rule." Our most recent decision on point is *Rice v. Rizk,* Ky., 453 S.W.2d 732 (1970), the holding of which is much disputed by the parties. In *Rice,* this Court reviewed many of the familiar rules for ascertaining wrongful death damages and stated:

"Lack of proof of the decedent infant Rice's power will not preclude recovery for the wrongful, negligent destruction of the infant's power to earn money. To require such proof would be to deny damages in the instant case, as well as in all similar wrongful, negligent death cases involving infants. There is an *inference* that the child would have had some earning power, and in this lies the basis for recovery.

Appellee would have us believe that the infant Rice was not a living person when Dr. Rizk first examined Mrs. Rice, and argues that even if living at the time the infant could have died before delivery or could have been born alive but with physical and mental defects. The jury awarded damages to Mrs. Rice based on the negligence of Dr. Rizk. The jury awarded funeral expenses for infant Rice and made a small award for pain and suffering to Mrs. Rice. It follows that the jury should have made some award for the destruction of the earning capacity of infant Rice.

The jury failed to follow the court's instructions to award some sum on all elements of proven damages. A new trial must be awarded because the verdict is contrary to the law." (Citations omitted.) *Id.* at 735–36.

The Court emphasized its use of the word "inference" and considered arguments presented to defeat to it. Concluding that the inference had not been defeated, the Court held that some award should have been made and reversed the case. In our view, *Rice* properly holds that damages flow naturally from the wrongful death of a person unless there is evidence from which the jury could reasonably believe that the decedent possessed no power to earn money. In the case at bar, there was no evidence that the decedent was other than a normal four-year-old boy and certainly no evidence of a disability so profound as to render him incapable of earning money upon reaching adulthood. It follows, therefore, that the trial court was clearly erroneous in overruling the motion for a new trial and the Court of Appeals correctly reversed.

■ Appellant broadly construes the opinion of the Court of Appeals as holding that the jury must accept the uncontradicted expert witness testimony and return some damage verdict based thereon, and appellee insists that such is indeed the correct rule of law. We need not determine the exact breadth of the Court of Appeals opinion as we are firmly of the view that although the jury was required to return some amount for destruction of the child's power to earn money, it was not required to return a verdict within the parameters stated by Dr. Brookshire. While Dr. Brookshire's testimony may have been uncontradicted, it was not free of challenge on grounds of exaggeration or poor scholarship. The use of economic expert testimony is an acceptable way of proving wrongful death damages (*Prater v. Arnett, supra*), but the jury retains the right to judge the weight of such testimony and under no circumstances may it be compelled to return a verdict dictated by economic expert testimony. *Adams v. Davis,* Ky.App., 578 S.W.2d 899 (1979).

■ It has long been recognized that under the Kentucky wrongful death stat-

ute, compensating, as it does, for destruction of the decedent's power to earn money, there is necessarily an element of speculation involved and particularly is this true in the case of children who have no established history of earnings. *Amerco Market Co. of Memphis, Inc. v. Myers,* 494 F.2d 904 (6th Cir.1974) (applying Kentucky law); *City of Louisville v. Stuckenborg, supra.* We have held that the jury must be allowed great latitude in such cases and its verdict should be measured for excessiveness by the "first blush rule." *City of Louisville v. Stuckenborg, supra; See also McCallum v. Harris,* Ky.App., 379 S.W.2d 438 (1964); *West Kentucky Coal v. Shoulders' Adm'r,* 234 Ky. 427, 28 S.W.2d 479 (1930). *See also Nolan v. Spears,* Ky. App., 432 S.W.2d 425 (1968), allowing review of damages claimed to be inadequate under the first blush rule. We reaffirm our reliance on these traditional rules of law and affirm the Court of Appeals' reversal for a limited retrial.

## II.

■ Having determined that a limited retrial is required, we must also decide whether the jury should be informed of the sums William Sully Griffin, IV, and Leslie Michele Griffin were awarded for loss of affection and companionship, and the sums the decedent's estate was awarded for pain and suffering and medical and funeral expense. Our task is made more difficult by virtue of the satisfaction of the judgment for the foregoing sums so that we are not at liberty, if we were so inclined, to order a full retrial on damages.

While appellant has expended most of its energy attempting to obtain reversal of the Court of Appeals opinion requiring any retrial, in the alternative, it adopted the views of Judge Gudgel in his concurring opinion, quoted hereinabove, that the new jury will likely award significant additional sums even though the earlier jury chose to compensate the decedent's heirs through other means. Said otherwise, it is appellant's view that unless the jury on retrial is informed of the earlier damage awards, it will compensate for items already taken into account in the first trial. Appellees

reject this view and insist upon a retrial on only the issue of destruction of power to earn money. They take the view that the damages awarded in the first trial were to legally different plaintiffs and compensated for different items of damage. The parties agree, however, that by virtue of the applicable statutes, William Sully Griffin, IV, and Leslie Michele Griffin are the ultimate beneficiaries of all damages awarded, and in the first trial, the jury was so informed.

This Court has long endorsed the view that damages may be separated from liability and that a case may be properly remanded for retrial of damages only. *Phipps v. Bisceglia,* Ky., 383 S.W.2d 367 (1964); *Nolan v. Spears, supra.* We have gone further and held in a personal injury case that an award of medical expenses without any award for pain and suffering was contrary to the law and remanded for a retrial of only the erroneous portion of the verdict. *Wall v. Van Meter,* 311 Ky. 198, 223 S.W.2d 734 (1949). In *Deutsch v. Shein,* Ky., 597 S.W.2d 141 (1980), this Court discussed the standard by which we determine whether retrial of the whole case or damages alone is required. We stated the general rule to be that a limited retrial should be granted.

"Where a distinct and severable issue is to be decided, a trial on that issue alone is appropriate unless such a retrial would result in injustice." *Id.* at 146.

We held that when the issues of negligence, causation and damages had been litigated and the only issue on appeal was damages, no reason existed for retrial of the entire case; that retrial of damages alone was sufficient. Throughout *Deutsch,* however, is the concept that injustice not result from the truncated proceeding. *Id.* at 146. A similar view is found in *Nolan v. Spears, supra,* and these cases confirm the inherent power of a Court to consider the possibility of injustice on limited retrial and depart from the general rule if such appears likely.

Recently this Court was confronted with an issue of first impression which arose out of our adoption of comparative negligence

in *Hilen v. Hays*, Ky., 673 S.W.2d 713 (1984). The issue presented in *Young v. J.B. Hunt Transportation, Inc.*, 781 S.W.2d 503 (1989), was whether counsel was entitled to inform the jury of the effect of apportionment of liability. Was counsel entitled to tell the jury that to the extent plaintiff was at fault, his damages would be reduced accordingly? We acknowledged that in a perfect world, the jury should find facts without regard to the legal effect, but recognized that the fact finding process would be better served if the jury was given accurate information than if it was permitted to speculate, erroneously perhaps, as to the effect of its factual determinations. We said:

"The best way to safeguard litigants' rights to a fair verdict is to allow counsel to inform the jury of the legal effect of apportionment of liability and argue the significance of such determination in the context of the overall result. In so doing, counsel will not have to wonder what the jury knows or suspects and will be able to fully and accurately argue the case upon the evidence presented and confront the jury with the instructions of the court." *Id.* at 507.

In the arena of criminal law, the General Assembly has adopted an act commonly known as Truth–In–Sentencing, KRS 532.-055, which we upheld on the principle of comity in *Commonwealth v. Reneer*, Ky., 734 S.W.2d 794 (1987), which embraces the idea of informed decision-making by a jury. This Act permits the Commonwealth and, to a limited extent, the defendant to inform the jury of relevant matters prior to its determination of the sentence which should be imposed. Our decision in *Young* and KRS 532.055 support the view that the jury should be given all relevant information as it decides the issues presented and know how its decision on a particular issue will affect the overall result.

We have previously acknowledged appellees' contention that the individual claims of the parents were from legally different plaintiffs and compensated for separate damages. We have also noted, however, that the ultimate damage beneficiaries, whether by virtue of their status as parents or statutory-takers, are the same persons, and we now reiterate that all claims asserted in every phase of this litigation arose out of a single tragic event, and that all claims were initially tried in one proceeding.

In view of the foregoing, it would be inherently unjust to permit the jury on retrial to award what it may mistakenly believe to be the parents' only compensation. To achieve a just and informed verdict, and under the unique facts presented here, the jury on retrial should be told of the damages previously awarded.

On retrial, the parties should be allowed to present evidence as to the damage to the estate by virtue of the destruction of the decedent's power to earn money, and the jury should be instructed, in addition to the standard instructions, substantively as follows:

It has been established in this case that the negligence of Turfway Park Racing Association was a substantial factor in causing the death of Thomas Chase Griffin, and the Court has heretofore awarded Leslie Michele Griffin the sum of $250,000 for loss of affection and companionship, and William Sully Griffin, IV, the sum of $125,000 for loss of affection and companionship. The court has also awarded the estate of Thomas Chase Griffin the sum of $50,000 for pain and suffering from the time of his injury until his death, and the sum of $12,831.27 for medical and funeral expense.

The jury will answer the following question:

What sum of money do you find from the evidence will fairly and reasonably compensate the estate of Thomas Chase Griffin for the destruction of his power to earn money, not to exceed $_____ (the amount shown in evidence)?

The opinion of the Court of Appeals is affirmed in part and reversed in part and this cause is remanded to the Boone Circuit Court for further proceedings consistent herewith.

STEPHENS, C.J., and SPAIN and WINTERSHEIMER, JJ., concur.

WINTERSHEIMER, J., files a separate concurring opinion in which SPAIN, J., joins.

COMBS, J., files a separate opinion concurring in part and dissenting in part in which LEIBSON, J., joins.

WELLS T. LOVETT, Special Justice, files a separate opinion concurring in part and dissenting in part in which COMBS and LEIBSON, JJ., join.

WINTERSHEIMER, Justice, concurring.

I concur in the majority opinion in this case because I believe it reaches a just result in a difficult matter. In my view, it is appropriate to allow the jury to consider all the material originally decided.

However, I wish to state my views separately in regard to the question of whether a jury is required, as a matter of law, to accept the unrebutted testimony of an expert economist in a wrongful death action in behalf of a child's estate.

Here the jury returned a verdict which awarded "0" for the destruction of the earning power of the estate of the deceased infant. In the same instruction, the jury awarded approximately $62,000 for funeral and medical expenses as well as pain and suffering. The total was $375,000.

The expert opinion testimony presented referred to the deceased child as an "economic machine" and "8–hour machine" and a "statistical person." Fourteen working and summary tables were presented to the jury to support the opinion of the economic expert. The jury was asked to assume various facts in support of the opinion of the expert's computations. Among the so-called facts that the economist asked the jury to assume were the following: that the decedent would fulfill his complete earning power; that he would have a full time job from the age of 17 until the age of 73; that he would never lose a day of work and that he would get paid even if he did not work and that he would work every single week for the rest of his statistical life.

Certainly the use of a legitimate economic expert is an acceptable way of proving wrongful death damages. There is an inference that a child would have some earning power. *Rice v. Rizk*, Ky., 453 S.W.2d 732 (1970). However, the jury retains the absolute right to determine the weight of the testimony given by any expert and under no circumstances may it be compelled to return a verdict dictated by economic testimony. *Adams v. Davis*, Ky. App., 578 S.W.2d 899 (1979). The jury is not required to believe the testimony of an expert witness even though it is uncontradicted when such testimony is so much at variance with common experience and the usual course of human conduct as to make it unbelievable. *Citizens Fidelity Bank & Trust Co. v. Liberty National Bank & Trust Co.*, Ky., 257 S.W.2d 590 (1953). Here the defense trial counsel made the decision not to present their own economic expert but rather to cross-examine the expert offered by the plaintiff. There is no question that such a strategy is a proper and accepted defense practice. In this case the jury did not believe the testimony as presented by the expert for the plaintiff. The jury awarded "0."

Similar cases in which the jury has awarded "0" benefits include *Spalding v. Shinkle*, Ky.App., 774 S.W.2d 465 (1989); *Davidson v. Vogler*, Ky., 507 S.W.2d 160 (1974); *Hargett v. Dodson*, Ky.App., 597 S.W.2d 151 (1979).

*Rice, supra*, does not shift the burden of proof and does not relieve the plaintiff of convincing the jury of a future destruction of earning capacity. An inference is not a substitute for the burden of proof.

I concur in the majority opinion.

SPAIN, J., joins in this concurring opinion.

COMBS, Justice, concurring in part and dissenting in part.

I respectfully dissent from Part II of the majority opinion, insofar as it directs an instruction on retrial that specific awards have heretofore been made for loss of affection and companionship.

Pursuant to a fundamental principle of jurisprudence, it is the function of this Court to decide only cases and controversies properly before it. The issue as to the instruction was not properly presented. The only appeal from the trial court's judgment was taken by the present appellees. No complaint was made as to the instructions, nor did Turfway cross-appeal seeking a modification of instructions in the event of retrial of the issue appealed, i.e., one specific element of damages.

I am wary of a procedure whereby a party may inject into our discretionary review an issue initiated by a separate concurring opinion in the Court of Appeals. The Court of Appeals' opinion made no direction concerning the present question, as it was not in issue there, and indeed had not been presented to the trial court.

If as the majority of this Court believes a court has inherent power to depart from the general rule if injustice appears likely (ante at 672), that power should first be exercised within the sound discretion of the trial court, not from this Bench when no issue has been joined below.

I further believe that, if the issue is to be decided, the majority has decided it the wrong way. It strikes me as somewhat hypocritical to pledge our troth to the jury system, and in the same breath to voice our expectation that the jury will not perform as instructed by the court. A jury instructed to determine nothing but damages to future earning capacity, based on evidence relevant to that issue, would, we ought to presume, measure nothing more than that element of damages. Awards previously made to other parties for other damages, having no relevance to the issue, ought not to be a factor in the jury's deliberations.

LEIBSON, J., joins in this separate opinion.

LOVETT, Special Justice, concurring in part and dissenting in part.

I concur that the trial court erred when it denied the Motion for New Trial on the issue of damages recoverable by the Estate. The jury verdict of "0.00" for destruction of a child's power to earn money is inadequate as a matter of law.

Respectfully, I dissent from Part II of the majority opinion whereby upon retrial the jury will be instructed to consider the amounts paid to the parents for loss of affection and companionship when rendering its verdict upon a separate cause of action.

Let there be no question: This Court mandates the trial court to present *irrelevant* evidence to the jury. This is self-evident. In *O'Bryan v. Massey–Ferguson, Inc.*, Ky., 413 S.W.2d 891, 893 (1966), the court said:

> "The term 'relevant' as applied to evidence means that the evidence tends to establish or disprove an issue in litigation. 'Where there is nothing in the issues presented to warrant the proof offered, it is properly excluded.' 20 Am. Jur., Evidence, Section 247, p. 241."

The award by the first jury to the parents for loss of affection and companionship does not tend to establish or disprove the only issue now to be presented to the second jury, to wit, an award for the destruction of the child's power to earn money.

As all text authorities emphasize, there is no occasion to consider any of the rules of evidence, until first the basic determination is made that the information offered is relevant. For centuries, "relevance" has been the evidentiary gate keeper of Anglo–American jurisprudence. A nebulous thought that it will "avoid injustice" is an unworthy substitute. I cannot accept the principle that a jury should be presented with irrelevant evidence because otherwise "injustice" will result.

Indeed, the award by the retrial jury may be influenced—up or down—if the jury is told of the award to the parents in the first trial for loss of affection and companionship. Similarly, evidence that the parents are rich, or poor, or are child abusers, might likewise influence the jury and "avoid injustice". Once our legal system accredits irrelevant evidence to a jury to "avoid injustice," where, when, and how do we get off that roller-coaster?

In my judgment, *Young v. J.B. Hunt Transportation, Inc.*, Ky., 781 S.W.2d 503 (1989) and *Commonwealth v. Reneer*, Ky., 734 S.W.2d 794 (1987) cited in the majority opinion are distinguishable. Both cases hold the jury may be instructed as to the legal effect of clearly *admissible* evidence. Before us now is the issue whether to instruct the jury to consider otherwise *inadmissible* evidence.

The jury instruction mandated can be based only upon pure speculation that the jury in the first trial did not follow the Court's instruction on the methodology to reach its damages verdict. I think this lack of respect for the jury is ill-founded. More likely is the main hypothesis urged by Appellant that the jury discredited the testimony upon this one issue leading to its unsustainable verdict.

The majority opinion follows the pattern in the recent case *Hall v. Commonwealth*, Ky., 817 S.W.2d 228 (1991) so as to countenance presentation to the jury of otherwise inadmissible evidence in order to provide "background information." This Court should not introduce a medicine which will cause a sickness worse than any cure it purports to effect. Instructing a jury to take into consideration irrelevant, inadmissible evidence advances a precedent which we will sorely rue.

COMBS and LEIBSON, JJ., join in dissent.