Gerald YOUNG, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 2002–SC–0588–MR.

Supreme Court of Kentucky.

March 18, 2004.

Misty Jenine Dugger, Assistant Public Advocate, Frankfort, Counsel for Appellant.

Gregory D. Stumbo, Attorney General of Kentucky, Matthew D. Nelson, Assistant Attorney General, Brian T. Judy, Criminal

Appellate Division, Office of the Attorney General, Frankfort, Counsel for Appellee.

Opinion of the Court by Justice WINTERSHEIMER.

In 1998, Young was found guilty by a jury of capital murder and sentenced to death. He appealed and this Court affirmed his conviction but reversed his death sentence because there was no aggravating circumstance applicable to his participation in the murder and remanded the case to the trial court for a new penalty phase. *Young v. Commonwealth*, Ky., 50 S.W.3d 148 (2001). A new penalty phase was conducted in 2002 and the jury sentenced Young to life in prison. It is from this sentence that he now appeals.

The questions presented on appeal are whether the parole statistics sought to be introduced by Young are probative of his chances of being paroled and whether the closing argument of the prosecutor was legally proper.

Defense counsel filed a motion *in limine* seeking to introduce statistical evidence establishing the probability of Young receiving parole. He claimed that the evidence was admissible under recent amendments to the truth-in-sentencing statute, KRS 532.055(2)(b), which allows a defendant to introduce evidence in mitigation or in support of leniency. At a pretrial hearing on the motion, the trial judge expressed concerns about the evidence because the statistics charting the decisions of the current parole board were not probative of the decisions of a future parole board. She also suggested that defense counsel obtain a witness who could testify about the statistics.

Defense counsel filed a supplemental memorandum in support of its motion on June 4, 2002, attaching as exhibits copies of certified records of the parole board's annual statistics for fiscal years 1993–94

through 2000–01. On June 6, 2002, the trial judge entered an order neither sustaining nor overruling the motion at that time, but requiring the defendant to provide additional support or argument for introducing the evidence.

During a bench conference at the new sentencing hearing, defense counsel sought to introduce the statistical evidence concerning parole. The Commonwealth objected because the records offered by the defense did not indicate the amount of time each prisoner was deferred and there was no witness present to explain these facts. It also objected on grounds that parole is not a random act and the statistics do not show the probability that this defendant would be paroled. The trial judge sustained the Commonwealth's objection because there was no witness to explain the statistical data. Ultimately, the jury sentenced Young to life in prison. This appeal followed.

## I. Parole Statistics

■ Young argues that the trial judge erred by prohibiting him from introducing statistical evidence of the likelihood that he will receive parole to rebut the prejudicial implications of the evidence presented by the Commonwealth of minimum parole eligibility. He contends that *Abbott v. Commonwealth*, Ky., 822 S.W.2d 417 (1992), is no longer applicable because of legislative changes in KRS 532.055. We find no error.

■ The statistics compiled by Young and sought to be introduced as to parole probability are not probative of his chances of being paroled. The evidence he attempts to present does not predict his actual chances of being paroled and therefore is irrelevant and incompetent. *See* KRE 401–403. The statistics presented for the years 1993 to 2001 cover only the

actions of the current parole board. His parole determination will be made by a different board selected by a different administration which may have different parole policies. Parole determination is inherently an individualized decision based on the particular facts of the case under consideration and it is therefore difficult, if not impossible, to predict by generalized probability statistics. *See Hunt v. State,* 321 Md. 387, 583 A.2d 218 (1990).

The contention by Young that his statistical evidence rebuts the parole eligibility evidence of the Commonwealth is without merit. The Commonwealth offered proof, pursuant to KRS 532.055(2)(a)(1) of the minimum parole eligibility of Young, not proof regarding the probability that Young would ever actually be paroled. The statistical evidence presented by Young does not controvert the parole eligibility proof presented by the Commonwealth and, consequently, does not qualify as rebuttal. *See Abbott, supra.*

Our review indicates that the trial judge did not abuse her discretion in refusing to accept the proffered statistical evidence from Young. The evidence simply fails to demonstrate what it is offered to prove; it does not indicate that Young is likely or unlikely to be paroled when he becomes eligible. The evidence relies on the assumption that the Young case is an "average" case and is highly speculative. The decision whether to grant parole to a defendant is an inherently individualized decision and although statistics may illustrate what happens in the average situation, they are not probative as to what will happen in a particular case.

## II. Closing Argument

■ Young contends that he was denied due process and substantially prejudiced by the closing argument of the prosecutor encouraging the jury to ignore evidence of mitigation and to send a general message to the community by imposing a maximum sentence against him. He concedes that this issue is not preserved but seeks review pursuant to RCr 10.26.

Upon a careful examination of the record in this case, we have determined that the comments of the prosecutor were not error and were certainly not palpable error. RCr 10.26. He did not make unfounded and inflammatory attacks on the opposing advocate. His comments on the mitigation evidence were not misleading and the prosecutor confined himself to the facts in evidence and the fair inferences that may be drawn therefrom.

■ When prosecutorial misconduct is claimed, the relevant inquiry on appeal should always center around the overall fairness of the trial, not the culpability of the prosecutor. *Maxie v. Commonwealth,* Ky., 82 S.W.3d 860 (2002); *see also Commonwealth v. Petrey,* Ky., 945 S.W.2d 417 (1997). Here, Young received a fundamentally fair trial. He has no basis for his complaints. A complete review of this case indicates that there were no due process violations relating to either the federal or Kentucky Constitution.

The sentence is affirmed.

COOPER and GRAVES, JJ., concur.

JOHNSTONE, J., concurs by separate opinion.

KELLER, J., dissents by separate opinion and is joined by LAMBERT, C.J., and STUMBO, J.

JOHNSTONE, Justice, concurring.

I agree with much of the thoughtful dissent of Justice Keller which supports the admission of parole data offered by a defendant during the sentencing hearing. It appears to me that the 1998 amendment to KRS 532.055(2)(b) should be construed

to permit a defendant to present evidence regarding the possibility of parole in order to rebut the prejudicial effect of the Commonwealth's evidence of minimum parole eligibility. However, I am not persuaded that the evidence in this case was sufficiently developed to allow its admission. Thus, I would leave the issue for another day.

KELLER, Justice, dissenting.

From the time that Kentucky first adopted bifurcated Truth–in–Sentencing procedures for felony criminal trials, issues began cropping up about the type and extent of parole information a jury should receive prior to making its sentencing decision. It is beyond dispute, however, that in our eighteen (18) years of experience under Truth–in–Sentencing, we have concluded that the possibility that a defendant might receive an early release from prison is a relevant factor in a jury's sentencing determination. After all, we have permitted the introduction of evidence relating to parole eligibility,[1] good time credits,[2] and credit for time served[3] because those matters "potentially affect the actual duration of a period of imprisonment imposed by the jury."[4] In affirming the judgment of the Fayette Circuit Court in the case at bar, however, today's plurality opinion merely perpetuates the inevitable "confusion and 'half-truths' "[5] that Justice Leibson foreshadowed when this Court first extended comity to KRS 532.055, and continues to "allow the Commonwealth to produce vague, uncertain and incomplete evidence about existing minimum parole guidelines."[6] When this Court previously expressed its view that parole eligibility statistics were not admissible under the then-existing version of KRS 532.055(2)(b), a dissenting opinion made a persuasive case for the introduction of actual parole data as "evidence in mitigation" to rebut the prejudicial implications of parole eligibility information introduced by the Commonwealth:

> These statistics were the only means available to the appellant to complete the information given by the Commonwealth, and to restore some degree of fairness and credibility to the sentencing process. The Majority Opinion shuts the door on legitimate rebuttal; it denies fundamental fairness.[7]

Subsequent to that opinion, however, the case for the admission of parole data became virtually unassailable when the General Assembly amended KRS 532.055(2)(b) to permit defendants to introduce a broader range of evidence in Truth–in–Sentencing proceedings, i.e., "evidence in mitigation *or in support of leniency.*"[8] In light of this statutory change, there is no longer any serious dispute that, at KRS 532.055 Truth–in–Sentencing proceedings, criminal defendants are entitled to introduce proof that they are unlikely to be paroled at

1. *Boone v. Commonwealth,* Ky., 780 S.W.2d 615 (1989). *See also Offutt v. Commonwealth,* Ky., 799 S.W.2d 815, 817 (1990).

2. *Cornelison v. Commonwealth,* Ky., 990 S.W.2d 609 (1999).

3. *Commonwealth v. Higgs,* Ky., 59 S.W.3d 886, 893–94 (2001).

4. *Cornelison,* 990 S.W.2d at 611.

5. *Commonwealth v. Reneer,* Ky., 734 S.W.2d 794, 800 (1987) (Leibson, J., dissenting).

6. *Huff v. Commonwealth,* Ky., 763 S.W.2d 106, 112 (1988) (Leibson, J., dissenting).

7. *Abbott v. Commonwealth,* Ky., 822 S.W.2d 417, 420 (1992) (citations omitted) (Leibson, J., dissenting).

8. 1998 Ky. Acts. ch. 606, § 111 (effective July 15, 1998) (emphasis added).

their initial parole eligibility hearing.[9] Accordingly, today's plurality opinion abandons the view that KRS 532.055(2)(b) excludes proof on that topic, and instead takes issue with *the form of* the evidence that Appellant offered to prove the unlikelihood that he would be paroled at his minimum parole date—*i.e.,* the certified copies [10] of Kentucky Parole Board records showing that only a fraction of inmates received a recommendation for parole at their initial parole eligibility hearings between fiscal years 1993–1994 and 2000–2001.[11] The plurality opinion affirms the trial court's decision to exclude Appellant's statistical evidence because, in its estimation, the Parole Board's records "do[ ] not indicate that Young is *likely or unlikely* to be paroled when he becomes eligible." [12] Because " '[r]elevant evidence' means evidence having any tendency to make the existence of a fact that is of consequence to the determination of an action more proba-ble or less probable than it would be without the evidence[,]" [13] and the concerns highlighted in the plurality opinion address themselves only to the weight that the jury should assign to such evidence, *i.e.,* to its sufficiency rather than to its admissibility, I respectfully dissent and vote to reverse Appellant's life sentence and to remand Appellant's Murder conviction to the trial court for a new KRS 532.055 Truth–in–Sentencing proceeding.

In the outset, I must note that the basis for the trial court's decision to exclude this evidence was wholly unrelated to the grounds upon which today's plurality opinion deems it inadmissible. Appellant filed a motion *in limine* in which he sought the trial court's approval to introduce the Parole Board's statistical records "to rebut the prejudicial implications of the Commonwealth's evidence of minimum parole eligibility, should the Commonwealth intro-

**9.** I would observe that the Commonwealth essentially conceded as much in the trial court when it admitted that *Abbott* "was somewhat altered by the change of the statute." And, in its brief to this Court, the Commonwealth's only retort to Appellant's argument that the amendment to KRS 532.055(2)(b) authorizes "parole probability evidence" is a statement in a footnote that reads "[t]he amendment ... does not define or explain the scope or purpose of the change in the statutory language."

**10.** *See* KRE 803(8); KRE 901(b)(7); KRE 902(4).

**11.** The Parole Board's statistics demonstrated that at initial parole eligibility hearings: (1) parole was actually recommended for between only nine percent (9%) and twenty percent (20%) of inmates; and (2) the Parole Board typically orders "serve outs" for more than twice the number of inmates that it recommends parole:

| FY | # Initial Hrngs. | Rec. for Parole | Deferred | Serve Outs |
|---|---|---|---|---|
| 00-01 | 5,047 | 784 (16%) | 2,099 (42%) | 2,164 (42%) |
| 99-00 | 4,872 | 436 ( 9%) | 2,094 (43%) | 2,342 (48%) |
| 98-99 | 4,852 | 626 (13%) | 2,091 (43%) | 2,135 (44%) |
| 97-98 | 5,244 | 496 ( 9%) | 2,519 (48%) | 2,229 (43%) |
| 96-97 | 6,458 | 907 (14%) | 2,879 (45%) | 2,672 (41%) |
| 95-96 | 5,532 | 854 (15%) | 2,192 (40%) | 2,486 (45%) |
| 94-95 | 4,497 | 726 (16%) | 1,727 (38%) | 2,044 (46%) |
| 93-94 | 4,241 | 856 (20%) | 1,772 (42%) | 1,613 (38%) |

**12.** *Young v. Commonwealth,* Ky., 129 S.W.3d 343, 345 (2004) (emphasis added).

**13.** KRE 401. *See also* KRE 402 ("All relevant evidence is admissible, except as otherwise provided by the Constitutions of the United States and the Commonwealth of Kentucky, by acts of the General Assembly of the Commonwealth of Kentucky, by these rules, or by other rules adopted by the Supreme Court of Kentucky.").

duce such evidence." On the day of trial, the Commonwealth objected to the introduction of the records on the grounds that the raw data could be misleading. The Fayette County Commonwealth's Attorney hypothesized that the Parole Board might be "cooking its books" by denying parole at initial eligibility hearings but then granting parole to large numbers of inmates after short deferments and therefore argued that the raw data should not be admitted into evidence unless the defense could produce a witness, subject to cross-examination, who could explain and interpret that data. Although today's plurality opinion's holding is premised exclusively on a conclusion that "[t]he evidence ... does not predict his actual chances of being paroled and therefore is irrelevant and incompetent[,]" [14] and the plurality opinion states that "the trial judge did not abuse her discretion in refusing to accept the proffered statistical evidence[,]" [15] I would note that the trial court did not utter any of the words "probative" or "relevant" or "substantially more prejudicial than" when it excluded this evidence. Instead, after observing that the prosecuting attorney "raised a good point about deferrals" and vocalizing the possibility that the Parole Board's data might "make them look better than they actually are," the trial court ruled that Appellant could not introduce the Parole Board records "without having someone come in to 'flesh out'" the data contained in those records. Accordingly, this is not a case where we must give deference to a trial court's relevancy determination; this trial court made no such determination, and I would further observe that neither the plurality opinion nor the Commonwealth make any attempt to defend the trial court's ruling on its own merits.

KRS 532.055 "embraces the idea of informed decision-making by a jury." [16] This Court granted comity to the Truth–in–Sentencing Act to permit "a better informed sentencing process" [17] free of the chief deficiencies under the prior procedure whereby "the jury [was] required to sentence in a vacuum without any knowledge of the defendant's past criminal record or other matters that might be pertinent to consider in the assessment of an appropriate penalty." [18] This Court has described the policy behind Truth–in–Sentencing as allowing the jury access to "full and accurate information" relevant to its decision, including how much of the sentence the defendant was *likely to serve:*

> [T]he policy embodied in the "truth-in-sentencing" statute, KRS 532.055 is to provide full and accurate information to the sentencing jury, and to insure that the sentencing jury is well informed about all pertinent information relating to the person on trial. *The jury was entitled to know when it was deliberating Appellee's sentence not only how much of the sentence he was likely to serve,* but also how much of it he had already served.[19]

Today's plurality opinion subverts those ends by depriving juries of evidence that is necessary for them to contextualize parole eligibility information and to distinguish

**14.** *Young,* 129 S.W.3d at 345 (citing KRE 401–403).

**15.** *Id.* at 345.

**16.** *Turfway Park Racing Ass'n v. Griffin,* Ky., 834 S.W.2d 667, 673 (1992). *See also Mabe v. Commonwealth,* Ky., 884 S.W.2d 668, 672–3 (1994).

**17.** *Reneer,* 734 S.W.2d at 797.

**18.** *Id.*

**19.** *Higgs,* 59 S.W.3d at 894 (citations omitted and emphasis added).

between *eligibility* for parole consideration and the *probability* (or *improbability*) that a defendant will actually be paroled when he or she first becomes eligible. Although the Kentucky Rules of Evidence govern KRS 532.055 Truth–in–Sentencing proceedings before a jury,[20] and the plurality opinion states repeatedly (at least three (3) times by my count) that the Parole Board's records are not probative of whether Appellant actually will be paroled at his initial eligibility hearing, the opinion contains only one (1) passing citation to the KRE's three (3) most important relevancy rules, but nothing that even resembles an analysis of the admissibility of such evidence under those rules. As such, it appears that the plurality opinion has defined "probative" using some independent and undefined standard that has nothing to do with the relevancy provisions of the Kentucky Rules of Evidence, which "tilt[ ] outcomes toward admission rather than exclusion." [21]

The inclusionary thrust of relevancy as a concept is assured in two ways. By using the words "any tendency" to describe relevant evidence, *the rule intends to declare that an item of evidence is relevant if it possesses any probative value at all.* By using the gauge "more probable or less probable than it would be without the evidence," *the rule makes it clear that an item of evidence may be relevant even though it leaves the proposition toward which it is offered in great doubt.... In other words, an item of evidence is relevant under the terms of Rule 401 if it advances the inquiry to any degree at all.*[22]

When viewed through the proper lens of KRE 401, the parole records were relevant to prove that Appellant's parole at the time of his initial hearing was anything but a foregone conclusion. Although the plurality opinion's criticisms of this evidence are fair—the records from past parole proceedings, which group the entire inmate population together, do not establish conclusively that Appellant will be denied parole on this Murder sentence when he first comes before a future Parole Board [23]—those criticisms address themselves to the sufficiency [24] of Appellant's evidence rather than its admissibility under our Rules of Evidence. Although the plurality opinion's concerns identify issues that the Commonwealth could bring to the jury's attention through argument and/or independent evidence, to be *relevant* under the Kentucky Rules of Evidence an item of evidence "need not prove conclusively the proposi-

---

**20.** KRE 1101(b) ("These rules apply generally to ... criminal proceedings[.]"). *Cf. McGuire v. Commonwealth*, Ky., 885 S.W.2d 931, 938 (1994) (applying KRE 403 to evidentiary rulings in Truth–in–Sentencing proceeding).

**21.** ROBERT G. LAWSON, THE KENTUCKY EVIDENCE LAW HANDBOOK § 2.05[3], at 79–80 (4th ed.2003).

**22.** Evidence Rules Study Committee, Kentucky Rules of Evidence, Final Draft 21 (Nov. 1989).

**23.** I would dispute, however, the plurality opinion's statement that "[t]he statistics presented for the years 1993 to 2001 cover only the actions of the current parole board[,]" *Young*, 129 S.W.3d at 345, *see* KRS 439.320 (describing the procedures for the appointment of Parole Board Members and the length of their terms), and I would observe that the records that Appellant sought to introduce reflected parole decisions made by Parole Boards appointed by both Governor Brereton Jones (1991–1995) and Governor Paul Patton (1995–2003).

**24.** LAWSON, *supra* note 21 at § 2.05[3], at 80 ("Lack of appreciation of the leniency of this requirement and of the law's powerful tilt toward admission over exclusion can result from inadequate awareness of the difference between the concepts of 'relevancy' and 'sufficiency.' ").

tion for which it is offered. It need not even make that proposition appear more probable than not. . . . It is enough if the item could reasonably show that a fact is slightly more probable than it would appear without the evidence. Even after the probative force of the evidence is spent, the proposition for which it is offered still can seem quite improbable."[25]

Perhaps Appellant could have accumulated more specific parole data that was limited to inmates convicted of Murder or produced an expert witness who could have testified to his or her opinion regarding Appellant's prospects for parole. The possibility that Appellant might have found better evidence to prove his claim, however, does not render irrelevant the certified Parole Board records that Appellant actually sought to introduce in this case, which showed that, in any given recent year, *at best* one-fifth (1/5th) of inmates received a recommendation for parole at their initial parole hearings. Those records permitted a reasonable inference that Appellant's early parole was, at best, indefinite, and the trial court erred when it excluded this evidence.

In my view, this case is a prime illustration of why criminal defendants must be permitted to introduce such evidence. In its opening statement to the jury in this sentencing-phase-only retrial, the Commonwealth explained that it would introduce parole eligibility guidelines that "tell you when a defendant is eligible to first meet the parole board to see if he's going to be released or not." In its summation, however, the Commonwealth's discussion of the guidelines left a distinctly different impression. In fact, the Commonwealth omitted any use of any form of the word "eligibility" when it urged the jury to "send a message" to the defendant by giving him the maximum sentence possible and referenced the only exhibit published to the jury as follows: "I know about these parole guidelines—twelve (12) years for twenty-four (24) years and above including life." I appreciate the fact that a defendant can explain to the jury that "eligibility is no guarantee, and the defendant may have to serve every single day of the sentence you fix." But, in this case, Appellant's trial counsel recognized that it may require more than argument to shake a jury of its preconceptions and thus sought to introduce documentary evidence to prove that only a small fraction of inmates receive recommendations for parole at their initial eligibility date. In my view, there is no question that the evidence excluded by the trial court would have made the argument more tangible for the jury,[26] which presumably had no experience with the parole system and was thus prone to interpret parole *eligibility* as the near-certainty to which it was implicitly equated during the Commonwealth's summation. Justice Leibson's dissenting opinion in *Abbott* says virtually everything that needs to be said about the reasons that such evidence is relevant to a jury's sentencing recommendation:

> There is no logical reason why, when a jury has been given evidence of minimum parole eligibility, the defendant may not mitigate the resulting prejudice by offering statistics showing that only a fraction of convicts are granted parole

---

**25.** Evidence Rules Study Committee, Kentucky Rules of Evidence, Final Draft 21 (Nov. 1989) (quoting CLEARY, MCCORMICK ON EVIDENCE 542–43 (3d ed.1984)).

**26.** *See* Jenia Lontcheva, *Jury Sentencing as Democratic Practice,* 89 VA. L.REV. 311, 370

(2003) ("Providing Jurors with information about parole ... practices would not only serve the goal of consistency and the fair administration of justice, but would also promote the transparency and accountability of the justice system.").

on their initial try. To hold otherwise misleads the jury into believing that inmates are frequently paroled when they first become eligible and to encourage jurors to impose harsher sentences than they would otherwise think appropriate.... If the jury is entitled to know that a defendant may not serve the full term it imposes, surely it is also entitled to know that the vast majority of convicts are not paroled when they first become eligible.... [27]

In my opinion, those words are as true today as they were when they were written twelve (12) years ago, and Appellant should have an opportunity at a new sentencing hearing to introduce this statistical information for the jury's consideration.

LAMBERT, C.J. and STUMBO, J., join this dissenting opinion.

---

**27.** *Abbott,* 822 S.W.2d at 420 (citations omitted) (Leibson, J., dissenting).