## Fannon v. Commonwealth.

Nov. 19, 1943.

818

Hiram Owens for appellant.

Hubert Meredith, Attorney General, and Miss Blanche Mackey, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Reversing.

The appellant, Nola Fannon, has been sentenced to twenty-one years' imprisonment for the killing of her husband.

The Commonwealth's attorney filed a motion for a change of venue upon the grounds that public sentiment was "very, very prejudicial" to the Commonwealth, and that the defendant was related to many people in Knox County, so that the Commonwealth could not secure a fair and impartial trial. The evidence introduced on the motion established that the defendant did have many kinsfolk in the southern part of the county but only one in the northern section, and that she was a second cousin of a former County Judge and a Deputy Sheriff, both of whom are men of influence. Upon that evidence and his personal knowledge of the conditions, the court overruled the motion for a change of venue and sua sponte

directed that veniremen be summoned from Laurel County.

The authority of the court to provide a jury from a county other than that in which the offense was committed does not come into existence until the judge shall have been satisfied "after having made a fair effort, in good faith" that it will not be practicable to obtain a jury free from bias in the county in which the prosecution is pending. Section 194, Criminal Code of Practice. The exercise of the discretion of the trial court in this determination will not be interfered with in the absence of an abuse of power, and the interpretation of the grant of authority in respect of what is a fair trial in good faith has been very liberal. Thus, where there had been some difficulty in obtaining a local jury at a former trial of the accused, which had resulted in a disagreement, we held that in view of the experience the court, upon a motion for a change of venue, was authorized to direct the summoning of veniremen from an adjoining county without further effort to secure one locally. Johnson v. Commonwealth, 250 Ky. 297, 62 S. W. (2d) 1025. Also, where there had been difficulty in obtaining a jury in other cases growing out of the same offense. Benson v. Commonwealth, 249 Ky. 328, 60 S. W. (2d) 941. But where there was no "fair trial" or other effort made to determine the practicability of securing a local jury, we have consistently ruled it to be error to get a jury from another county. Alsept v. Commonwealth, 245 Ky. 741, 54 S. W. (2d) 337. The mere examination of the regular panel in which only one qualified juror was obtained was held not a sufficient trial. Williams v. Commonwealth, 258 Ky. 574, 80 S. W. (2d) 573. See, also, Carter v. Commonwealth, 267 Ky. 640, 102 S. W. (2d) 1020; Canter v. Commonwealth, 274 Ky. 508, 119 S. W. (2d) 864; Howard v. Commonwealth, 282 Ky. 663, 139 S. W. (2d) 742. We do not think it can be said to constitute an honest, fair effort to obtain a jury locally merely to draw on the court's personal knowledge of the situation and on evidence heard on a motion for a change of venue. There should have at least been some attempt or test by examination of prospective jurors.

The only defense the accused had was that which is commonly called "emotional insanity" but which is more accurately a passion which for a space of time effects a complete derangement of the intellect or an impulse to

do the act which the mind is not able to resist. 14 Am. Jur., Criminal Law, Sections 33, 35. Our leading case on this defense is Abbott v. Commonwealth, 107 Ky. 624, 629, 55 S. W. 196. Consistent with the instructions prepared in that opinion, the court in the instant case instructed the jury that they should acquit the defendant if at the time she shot and killed her husband she was of unsound mind, which condition was defined as embracing the absence of sufficient reason to know right from wrong, or of sufficient will power to govern her actions by reason of an insane impulse which she could not resist or control. But the court throughout the trial had refused to let the accused introduce evidence upon which this defense was based, and at the close of the evidence withdrew from the consideration of the jury what might have crept in.

The defendant had married the deceased when she was fourteen years old, and during the thirty years of married life had borne him eight children in eighteen years. He had taken up adulterous relations with a young woman and cruelly and pitilessly destroyed his home. He had crushed and humiliated his wife and children by his lust and pollution; his bestial conduct after returning from association with the woman; his boasts of his love for and association with her; and his brutal contempt and scorn of his wife. The night before the killing, he had told his wife to "hit the road and go to whoring it." She had prepared his breakfast at five o'clock in the morning and he told her to have his clothes ready when he came back as he was through with her and leaving. She begged him not to do it, but he responded, with an oath, demanding that she have his clothes ready. The defendant testified that her husband had started back into the room where the shotgun had been kept and from which she had moved it. Said she: "I don't know what kind of shape I got into. When I came to myself I was standing there hollering, 'Lord have mercy, honey, you have caused me to kill you.' I called for help. I don't know when the gun fired. I don't know what kind of shape I was in. I don't remember shooting him." The above general statement is formulated from the numerous avowals which the accused and her witnesses made in the record without the hearing of the jury.

In cases of this class where the relations of the deceased with the wife or husband of the accused were of

such a character that they might reasonably affect the nervous or mental condition of the defendant, those relations may be thoroughly inquired into. It is relevant and competent to prove any information or knowledge which came into the possession of the accused which might have induced his or her condition of mind or explain his or her conduct. It is competent to prove every statement, act and circumstance made, committed or existing a reasonable time before the crime charged which had been conveyed to the accused or of which he or she had personal knowledge if they tend to affect the mental state of the defendant at the time. That being the purpose of the evidence, it is not material that the information was true or false. This statement of admissible evidence obviously excludes as inadmissible statements and acts of the deceased or others which were not communicated to the defendant before the homicide. Shipp v. Commonwealth, 124 Ky. 643, 99 S. W. 945, 30 Ky. Law Rep. 904, 10 L. R. A., N. S., 335; Abbott v. Commonwealth, supra; Choate v. Commonwealth, 176 Ky. 427, 195 S. W. 1080; Blackerby v. Commonwealth, 200 Ky. 832, 255 S. W. 824. Perhaps to avoid confusion with respect to the qualification of notice or knowledge of the accused of illicit acts between the person killed and the wife or husband of the accused, a distinction should be noted. Evidence of such conduct and relations is admissible although not communicated if the defense is self-defense and it is claimed that the deceased was the aggressor, as such evidence would tend to establish his state of mind toward the accused. Blackerby v. Commonwealth, supra.

Under the foregoing rule, it is manifest that the court committed grievous error in refusing the defendant the right to introduce much of the offered evidence. Some of the testimony was not competent as measured by the rule. It follows also that the court erred in refusing to permit the attorney for the defendant in his opening statement to refer to the evidence along this line which he proposed to introduce.

It was also error not to permit the defendant to testify that she was undergoing a change of life. A doctor testified that that condition makes a woman very nervous and that the condition of the defendant was such that she might go temporarily insane.

Wherefore the judgment is reversed.