**David Leroy SKAGGS, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

**No. 89–SC–484–DG.**

Supreme Court of Kentucky.

Nov. 8, 1990.

Rehearing Denied March 14, 1991.

Rodney McDaniel, Linda K. West, Asst. Public Advocates, Dept. of Public Advocacy, Frankfort, for appellant.

Frederic J. Cowan, Atty. Gen., David A. Smith, Carol C. Ullerich, Asst. Attys. Gen., Criminal Appellate Div., Frankfort, for appellee.

COMBS, Justice.

David Leroy Skaggs, incarcerated under sentence of death, filed an RCr 11.42 motion to vacate sentence and an RCr 10.02 motion for new trial. Forgoing an evidentiary hearing, the circuit court denied relief. The Court of Appeals affirmed. We granted discretionary review.

Skaggs was convicted of the 1981 robbery and murder of an elderly couple in their home, and of associated burglary. Upon direct appeal and automatic sentence review, this Court affirmed. *See Skaggs v. Commonwealth*, Ky., 694 S.W.2d 672 (1985).

In a 1985 unpublished memorandum opinion (84–SC–1181–TG), we also upheld the denial of Skaggs' first motion for new trial. That motion offered as grounds the newly discovered evidence that the expert witness through whom the defense of insanity had been presented, one Bresler, had lately been exposed as a fake and a fraud, belying the trial testimony through which he had portrayed himself as a well-credentialed doctor of forensic psychology. Because the jury had had no reason to doubt Bresler's qualifications, and because he had testified as favorably for the defendant as a bona fide psychologist would have done, we concluded that substitution for Bresler would not have affected the outcome of the trial. We also noted that the defense had refused the services of a state psychiatrist, and had been granted funds with which to employ an expert of its choice.

Skaggs would now resurrect the Bresler issue as an element of his RCr 11.42 motion, arguing that the selection of Bresler, in conjunction with other alleged missteps by appointed counsel, demonstrates that the defendant did not enjoy effective assistance at trial. Citing *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), Skaggs urges that due process requires that he be afforded access to a competent psychiatrist. We have no quarrel with this proposition, although it may be noted that the issue in *Ake* was *access* to a psychiatrist, not her/his competence. The *Ake* decision deplored, as a deprivation of due process, a trial court's refusal either to appoint or to provide funds for a psychiatrist to examine an indigent defendant whose sanity was viably in issue. In contrast, the present record reveals that the trial court, after having offered to appoint a psychiatrist, acceded to the defendant's preference for an allocation of funds. The court could have done no more in providing access to competent psychiatric assistance; its actions bespeak faithful adherence, rather than an affront, to due process.

Appellant insists that he was nonetheless prejudiced, as surely as if the state, and not the defense, had provided a counterfeit psychologist. But in the present context at least, the prejudice must be persuasively shown. One challenging the effectiveness of counsel must establish: (1) that counsel's performance was so seriously flawed as to have vitiated the defen-

dant's right to counsel as guaranteed by the Sixth Amendment; and (2) that counsel's deficiencies prejudiced the defense, resulting in an unfair trial (i.e. an unreliable verdict). *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Gall v. Commonwealth,* Ky., 702 S.W.2d 37 (1986).

Appellant views our 1985 holding that the Bresler presentation created no substantial prejudice as palpably erroneous, and invites us now to seize the opportunity to reverse ourselves. To buttress this position, it is argued (as it might have been argued on the original motion for new trial) that the defense, had it consulted a legitimate psychologist, might have altered its entire trial strategy, eschewing the insanity theory altogether. Moreover, the prejudice is said to appear more telling in light of other irregularities alleged in the recent motions.

■ Assuming for the moment that counsel's failure to detect Bresler as a fraud demonstrates a constitutionally defective performance, we remain unconvinced that the incident, either singly or in accumulation, affected the ultimate reliability of the trial result. Including a well-corroborated confession (about which we shall have more to say, *infra*), the evidence overwhelmingly identified Skaggs as the perpetrator of the crimes, rendering implausible any defense except, possibly, insanity. Having again examined Bresler's testimony, even with the advantage of hindsight, we find the defense to have been credibly presented, favorably to the defendant, to a jury having no cause to doubt the witness's expertise.

■ Appellant asserts that trial counsel were prejudicially ineffective in failing to object to certain of the jury instructions. As part of its instruction on robbery in the first degree, the court required, for a verdict of guilty, findings that the defendant "took, or stole, a sum of money," from the victims, and that "in the course of so doing and with the intent [ ] he shot and killed" the victims. (Brackets added.) Appellant contends that insertion of the phrase "to accomplish the theft," (at our brackets)

was indispensable to a correct instruction, intent to accomplish theft being an element of the offense of robbery. *See* KRS 515.-020. It is arguable that the instruction was adequate, if somewhat vague. In the given context, one might easily read the word *intent,* connected by "in the course of so doing," as referring to the taking of money. But even assuming the instruction to have been erroneous in this particular, we fail to perceive any resultant prejudice to the defendant. The record is replete with evidence that the sole motive for the crimes was the acquisition of money, and that the theft was in fact accomplished. We are confident beyond doubt that the verdict would have been no different under a more precise robbery instruction.

■ Trial counsel also failed to object to an obviously and positively erroneous penalty phase instruction defining "aggravating circumstances" to mean "factors to show death is *the* appropriate sentence." (Emphasis added.) The vice of this proposition lies in its implication that where aggravating circumstances are found, death is the *only* appropriate penalty. Affirming on direct appeal in 1985, we concluded that the jury was well aware of its option *not* to impose the death penalty, even if it found aggravating circumstances to exist. *Skaggs v. Commonwealth, supra,* 694 S.W.2d at 679. The presence of the erroneous definition does not persuade us otherwise. The trial court's instruction 3 states that imposition of the death penalty, upon a finding of aggravating circumstances, is within the jury's discretion. And instruction 4(b) reads:

> If upon the *whole case* you have a reasonable doubt whether the defendant should be sentenced to death, you shall recommend a sentence of imprisonment instead. (Emphasis added.)

Viewing the penalty phase instructions in their entirety, we are convinced that, the misdefinition notwithstanding, the jury fully apprehended its discretionary authority, and that the error was therefore harmless beyond reasonable doubt, neither causing nor contributing to an unreliable result.

The record, then, does not prima facie sustain the claim of ineffective counsel. Appellant argues, however, that he was at least entitled to an evidentiary hearing on these issues in the circuit court.

But none of these questions involve any controverted evidentiary fact. It is by all conceded that Bresler was a fake. The instructions complained of are matters of record. Nothing extrinsic to the record is material in determining whether this defendant suffered substantial prejudice. A hearing on these issues was therefore not warranted.

Appellant demands a hearing on two other allegations contained in his RCr 11.42 motion, the merits of which he does not here argue in detail. Counsel were ineffective, Skaggs insists, in failing to move to suppress his confession on the grounds that it was the product of unlawful detention, without probable cause or consent, in violation of Fourth Amendment guarantees. The record contains extensive evidence as to the circumstances of the interrogation. It is not argued that this evidence is incorrect or incomplete, and it is not shown how the evidence indicates unlawful detention.

On this subject, the motion presented to the trial court states only:

2. Counsel failed to move to suppress evidence, including movant's confession, which was the produce of movant's unlawful detention.

It says no more. RCr 11.42(2) requires that the motion state specific grounds for relief and *facts* supporting those grounds. Failure to comply warrants summary dismissal. Appellant's motion creates no genuine controversy of fact, and presents no cogent argument of law. The purpose of an evidentiary hearing being to determine factual issues not resolvable from the record, the court below committed no error in denying this element of the motion without a hearing.

The RCr 11.42 motion further alleges:

3. Counsel failed to adequately confer with movant concerning his decision whether to testify at the penalty phase of his trial.

We first observe that the record demonstrates rather conclusively that counsel did confer with the defendant on this subject at the *first* penalty phase trial (which ended with the jury unable to agree). There is no reason to assume that the effect of this conference did not persist through the second trial. Considering the record in conjunction with the paucity of facts alleged in support of the motion, we conclude that an evidentiary hearing was not required.

■ Appellant's (second) RCr 10.02 motion for new trial was also denied without a hearing. As grounds for relief, this motion alleges, as newly discovered evidence, that the KSP firearms examiner who testified for the Commonwealth, one Baxter, falsely stated under oath that he held a Bachelor of Science degree. This revelation erodes Baxter's credibility, in two ways: (1) might he also have lied about his other qualifications, or about his findings? (2) being less qualified than he represented, might he have been *mistaken* in his findings? These questions might properly be addressed in an evidentiary hearing. But there is an antecedent question: Was Baxter's testimony material, i.e., is there a reasonable likelihood that it affected the judgment of the jury in determining guilt or innocence? *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959).

Baxter testified that, prior to the recovery of any weapon, he had determined that both victims were killed by bullets from the same .25–caliber gun. He had later determined that the slugs were fired from the pistol to which Skaggs had directed the police.

Appellant argues that this testimony was material because of a "significant conflict in the evidence" as to whether he or an accomplice fired the shots. The conflict is between appellant's two confessions. In the first he admitted participating in the crime, but alleged that one Davis had done the killing, with a .25–caliber pistol. In the second he confessed that he had acted alone, and had himself pulled the trigger. Appellant directed police to a .25–caliber

handgun which he had disposed of in a backyard in Columbus, Indiana. Investigation revealed that Davis had an alibi. Moreover, appellant's second confession is intrinsically more credible than the first, being subsequent, less self-serving, and more against interest. We fail to discern in this evidence any significant conflict. It is compellingly apparent that the result of the trial would have been no different had Baxter not testified at all; his testimony did not deprive the defendant of a fair trial or due process of law. The trial court did not err in denying the motion for new trial.

Appellant poses an interesting argument with respect to the Court of Appeals decision under review. Of the three-judge panel, one wrote affirming the trial court on the merits on all issues; a second concurred in that result, stating a view that it would be contrary to the Kentucky Constitution for a Court of Appeals panel to reverse a death sentence upon review of a ruling on an RCr 11.42 motion; the third dissented on the merits. Appellant maintains that he has been denied his right of appeal, in that only one judge affirmed on the merits, whereas Ky. Const. § 111(4) requires a *majority* decision. This issue, however attractive for its subtleties, has been made moot by our grant of appellant's motion for discretionary review of the merits of his appeal.

■ We take this occasion to express our view that the Court of Appeals is without authority to review any matter affecting the imposition of the death sentence. CR 76.18(2), in its present form, provides for automatic transfer to this Court.

The decision of the Court of Appeals and the orders of the Barren Circuit Court are affirmed.

All sitting.

All concur.