COMMONWEALTH OF KENTUCKY,
Appellant/Cross–Appellee,

v.

Christopher Ray HIGGS,
Appellee/Cross–
Appellant.

Nos. 1998–SC–0673–DG,
1999–SC–0590–DG.

Supreme Court of Kentucky.

Nov. 21, 2001.

A.B. Chandler, III, Attorney General, Samuel J. Floyd, Jr., Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, Counsel for Commonwealth of Kentucky.

Daniel T. Goyette, Frank Wm. Heft, Jr., Louisville, Counsel for Christopher Ray Higgs.

COOPER, Justice.

Appellee/Cross–Appellant Christopher Ray Higgs was convicted in the Jefferson Circuit Court of manslaughter in the second degree and sentenced to ten years in prison. The Court of Appeals reversed and remanded for a new trial, finding error in (1) the jury instruction on the defense of self-protection; (2) the admission during the guilt phase of the trial of evidence of the victim's good character for peacefulness; and (3) the admission during the penalty phase of evidence regarding good time credit and credit for time served prior to trial. The Court of Appeals found no error in (4) the admission of evidence of a specific instance of misconduct during the Commonwealth's cross-examination of Appellee's father, Jacob Higgs. We now affirm as to issue (4), reverse as to issues (1), (2) and (3), and reinstate the judgment of the Jefferson Circuit Court.

Appellee admitted killing his former employer, Charles Endicott, but claimed he did so in self-defense. Appellee worked at Endicott's trucking company in Charlestown, Indiana, from the time he left high school in 1994 until he voluntarily quit his employment in July 1995. In October 1995,

Appellee stole a .380 Beretta handgun from the glove compartment of Endicott's pickup truck and traded it to his brother-in-law for a .25 caliber semiautomatic pistol. Appellee claimed at trial that he stole the Beretta because he was afraid Endicott would use it to shoot him; however, he admitted that he also stole a television and a videocassette recorder from Endicott's Indiana farm. Endicott suspected Appellee had stolen the Beretta, and there was substantial evidence at trial that Endicott had threatened to assault or kill Appellee if he could but find him. Bill Brewer, another Endicott employee, suspected that Appellee had also burglarized his residence and stolen a shotgun.

On November 3, 1995, Endicott and Brewer learned that Appellee was living in an apartment off Cane Run Road in Jefferson County, Kentucky. They proceeded to the apartment and confronted Appellee who admitted stealing the Beretta. Appellee claimed the gun was in the possession of his father, Jacob Higgs. After an unsuccessful attempt to contact Jacob Higgs by telephone, Endicott announced that the three would proceed to Mr. Higgs's residence to retrieve the Beretta. According to Appellee, Endicott and Brewer grabbed him by his arms and alternately led, carried, and dragged him to Brewer's pickup truck, and that Endicott forcibly shoved him into the truck's passenger compartment. Endicott then entered the passenger side of the truck and Brewer the driver's side, so that Appellee was trapped between the two. Brewer drove to a nearby convenience store to purchase cigarettes. According to Appellee, while Brewer was in the store, Endicott threatened to take him to Charlestown, beat him, then kill him; and that Endicott then struck him in the sternum with his fist. Appellee then produced the .25 caliber semiautomatic handgun from under his shirt and placed the muzzle to

Endicott's head. When Endicott reached for the gun, Appellee fired the fatal shot.

## I. SELF–PROTECTION INSTRUCTION.

The Court of Appeals held that the jury was improperly instructed to apply an objective standard in determining Appellee's right to use deadly physical force in self-protection against kidnapping. KRS 503.050(2). We agree, but find the error to have been harmless because it did not affect the ultimate verdict of the jury. RCr 9.24; *Skaggs v. Commonwealth*, Ky., 803 S.W.2d 573, 575 (1990), *cert. denied*, 502 U.S. 844, 112 S.Ct. 140, 116 L.Ed.2d 106 (1991).

Instruction No. 1 was the instruction on murder, and Instruction No. 2 was the instruction on manslaughter in the first degree. The jury rendered specific verdicts finding Appellee not guilty of those offenses. Under Instruction No. 3, the jury could have found Appellee guilty of manslaughter in the second degree if he killed Endicott and "[t]hat in so doing, he was acting wantonly." Under Instruction No. 4, Appellee could have been found guilty of reckless homicide if he killed Endicott and "[t]hat in so doing, he was acting recklessly." Instruction No. 5, the instruction on self-protection, provided in words and figures as follows:

Even though the defendant might otherwise be guilty of Murder under Instruction No. 1, or Manslaughter in the First Degree under Instruction No. 2, if at the time the defendant killed Mr. Endicott (if he did so), he believed that Mr. Endicott was about to use unlawful physical force upon him, he was privileged to use such physical force against Mr. Endicott as he believed to be necessary in order to protect himself against it, but including the right to use deadly physical force in so doing

only if he believed it to be necessary in order to protect himself from death, serious physical injury or being kidnapped. *But, if the defendant was being unlawfully restrained under circumstances which constituted either Unlawful Imprisonment in the First Degree or Unlawful Imprisonment in the Second Degree then the defendant was not privileged to use deadly physical force.*

The above instruction is subject to the following qualification:

Regardless of what the defendant then believed, if you believe from the evidence beyond a reasonable doubt the following:

(a) That it was not in fact necessary for him to use any physical force against Mr. Endicott in order to protect himself, or, if it was, he used more than was actually necessary:

AND

(b) That his belief to the contrary and the action he took against Mr. Endicott in reliance upon that belief amounted to:

(1) Reckless conduct, then he was not so privileged, and you will find him guilty of Reckless Homicide under Instruction No. 4;

OR

(2) Wanton conduct, then he was not so privileged and you will find him guilty of Manslaughter in the Second Degree under Instruction No. 3.

(Emphasis added.) Instruction No. 6, the "definitions" instruction, included the statutory definitions of wantonly, KRS 501 .020(3), recklessly, KRS 501.020(4), and restrain, KRS 509.010(2), and defined kidnapping and unlawful imprisonment in the first and second degrees in accordance with the statutory elements of those offenses. KRS 509.040; KRS 509.020; KRS 509.030.

This case was tried prior to our decision in *Elliott v. Commonwealth,* Ky., 976 S.W.2d 416 (1998), and neither Instruction No. 3, manslaughter in the second degree, nor Instruction No. 4, reckless homicide, included the absence of the right to act in self-protection as an element of the offense. *Shannon v. Commonwealth,* Ky., 767 S.W.2d 548, 551–53 (1988) ("*Shannon, Part II* "), overruled, *Elliott, supra,* at 422. Appellee did not preserve this issue for review; nor did he object to the fact that paragraph (b) of the mistaken belief qualification in the self-protection instruction incorrectly predicated his guilt of manslaughter in the second degree or reckless homicide partially upon the existence of a wanton or reckless *act* committed in self-protection, whereas KRS 503.120(1) applies only to a wanton or reckless *belief* in the need to so act. *Shannon, supra,* at 548–51 ("Shannon, Part I"); *Elliott, supra,* at 420–21. Appellee's only claim of error with respect to Instruction No. 5 is that, although the instruction correctly predicated his right to use deadly physical force on his *belief* that such was necessary to protect himself from kidnapping, the instruction incorrectly provided that he could not use deadly physical force in self-protection if, in fact, he was not being kidnapped, but only unlawfully imprisoned. In other words, if the jury believed Appellee was not actually being (or about to be) kidnapped, as that offense is defined in KRS 509.040, but was only being (or about to be) unlawfully imprisoned, as defined in KRS 509.020 and KRS 509.030, then he was not authorized to use deadly physical force in self-protection regardless of what he, himself, believed.

■ The "focus of the penal code is on the defendant's actual subjective belief in the need for self-protection and not on the objective reasonableness of that belief." *Commonwealth v. Hager,* Ky., 41 S.W.3d

828, 836 (2001) (quoting *Elliott, supra,* at 419). Even if a defendant is mistaken in his subjective belief, he is still entitled to the defense of self-protection, subject only to the wanton or reckless belief qualification described in KRS 503.120(1). The error here is similar to that which occurred in *Hager* when the jury was instructed to determine whether the defendant was "mistaken in his need" for self-protection instead of whether he was "mistaken in his belief" in the need for self-protection. *Hager, supra,* at 831.

It was proper to instruct the jury on the elements of kidnapping and the definition of "restrain" to assist the jury in determining whether Appellee actually believed he was being kidnapped and, if so, whether he was mistaken in that belief. However, the instructions on the elements of unlawful imprisonment in the first and second degrees were, at best, surplusage. If Appellee was not actually being kidnapped as defined in the instructions, it was irrelevant whether he was being unlawfully imprisoned (or, for that matter, was being subjected to any other criminal offense against which the use of deadly physical force is *not* authorized by KRS 503.050(2)).

However, "not only error but injury must be shown to justify a reversal for error in the instructions." *Deaton v. Commonwealth,* 288 Ky. 246, 156 S.W.2d 94, 100 (1941). The erroneous language in Instruction No. 5 had no effect on the ultimate verdict in this case. The erroneous language pertained only to the use of deadly physical force in self-protection against being kidnapped. The instructions presented two theories under which Appellee could be found guilty of manslaughter in the second degree, *viz:* under Instruction No. 3, that he did not intend to kill Endicott but did so while acting wantonly (*e.g.,* by placing the muzzle of his gun to Endicott's head); or under Instruction No.

5, that he intentionally killed Endicott in self-defense, but was mistaken in his belief that he needed to use deadly physical force in self-protection (*e.g.,* he subjectively, but mistakenly, believed he was being kidnapped) and that his mistaken belief in that regard was wantonly held.

The verdict does not identify the jury's theory of guilt. However, the erroneous language in Instruction No. 5 could not have affected a verdict under Instruction No. 3, because self-protection was not a defense under that instruction. Self-protection was a defense only to murder under Instruction No. 1 or to manslaughter in the first degree under Instruction No. 2. If the jury found Appellee guilty under Instruction No. 5(b)(2), the error was equally harmless; for in order to find him guilty of manslaughter in the second degree under that instruction, the jury had to find that he actually believed he was being kidnapped, thus was privileged to use deadly physical force against Endicott, subject to the wanton belief qualification. If the jury had found under this erroneously worded instruction that Appellee mistakenly believed he was being kidnapped, *i.e.,* he was, in fact, being only unlawfully imprisoned, it (1) would have been required to find that he was not privileged to use deadly physical force against Endicott, thus, (2) would never have reached the wanton belief qualification, and (3) would have convicted Appellee of either murder or manslaughter in the first degree. If the jury found Appellee guilty under Instruction No. 5(b)(2), it must have found that he killed Endicott under a mistaken belief that it was necessary to use deadly physical force to protect himself from death or serious physical injury at the hands of Endicott. Thus, whether the jury found Appellee guilty under Instruction No. 3 or under Instruc-

tion No. 5(b)(2), the erroneous language in Instruction No. 5 did not affect the verdict.

## II. CHARACTER OF THE VICTIM: KRE 404(a)(2).

Appellee's theory of the case was that Endicott was a violent and dangerous man whom Appellee had reason to believe intended to kidnap and kill or seriously injure him; thus, he had reason to believe that he needed to kill Endicott in self-defense. KRS 503.050(2). Accordingly, Appellee testified that Endicott once told him that he had "beaten up" two former employees who had stolen from him and that, on two different occasions, Appellee personally witnessed Endicott assault his own son. Appellee also described an occasion when Endicott apparently caught him loafing on the job, grabbed him by the shirt, pulled him out of a truck, and threatened him with bodily harm. Finally, although the Beretta was not stolen until October 1995, Appellee related an incident occurring in August 1995 when he encountered Endicott at the Kentucky State Fair and Endicott cursed him and chased him until Appellee finally escaped by climbing over a fence.

■ Angela Anderson, Appellee's mother and an employee of Endicott Trucking Company, testified that on five or six occasions after the Beretta was stolen, Endicott threatened to beat Appellee to death; and that on one occasion, Endicott told her that he would take Appellee to his company shop in Charlestown, beat him, kill him, and dump his body where it could not be found. Anderson testified that she had related all of this information to Appellee. Appellee's father, Jacob Higgs, testified that he had heard that Endicott was looking for Appellee and that he had advised Appellee of that fact. In rebuttal, the Commonwealth produced two character witnesses who testified that Endicott had a reputation in the community as a peaceful person. The Court of Appeals held that the admission of this rebuttal evidence was reversible error. We disagree.

KRE 404(a) provides in pertinent part:

Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:

. . .

(2) . . . Evidence of a pertinent trait of character of the victim of the crime offered by an accused . . . or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor.

Appellee claims, and the Court of Appeals agreed, that evidence of Endicott's character trait of peacefulness was erroneously admitted in this case because Appellee's purpose in introducing evidence of Endicott's prior threats and violence was not to prove that Endicott acted in conformity therewith, or that Endicott was the first aggressor, but only to prove Appellee's claim that he feared Endicott.

It is well settled that a defendant can introduce evidence of particular violent acts of an alleged victim, evidence of threats by the victim, and evidence of hearsay statements about such acts or threats, all of which tends to show that the defendant had a justifiable fear of the victim at the time of their encounter; fear of another is significant to the defense of self-protection and the evidence is admissible to prove that element. Despite having some of the appearances of character evidence, proof offered to show a fear of the victim by the accused (and relevant for that purpose) is not

character evidence, i.e., it is not used to show a trait of character to support an inference of conduct in accordance therewith. It does not, therefore, open the door for the prosecution to introduce evidence of the character of the alleged victim for peacefulness.

R. Lawson, *The Kentucky Evidence Law Handbook* § 2.15, at 70–71 (3d ed. Michie 1993) (citing as examples, *Cessna v. Commonwealth,* Ky., 465 S.W.2d 283, 284–85 (1971); *Carnes v. Commonwealth,* Ky., 453 S.W.2d 595, 598 (1970); *Fannon v. Commonwealth,* 295 Ky. 817, 175 S.W.2d 531, 533–34 (1943); *Wilson v. Commonwealth,* Ky.App., 880 S.W.2d 877, 878 (1994)). Those cases hold that evidence of prior specific acts of threats or violence by the victim is admissible if relevant to prove the state of mind of the defendant, *e.g.,* fear of the victim, at the time of the killing. None of those cases address whether the introduction of such evidence authorizes or precludes rebuttal evidence of the victim's character for peacefulness.

▮  A recent amendment to the Advisory Committee's Notes to Federal Rule of Evidence (FRE) 404(a), which is nearly identical to KRE 404(a), states that "rebuttal is not permitted under this Rule if the accused proffers evidence of the alleged victim's *character for a purpose* other than to prove the alleged victim's propensity to act in a certain manner." FRE 404(a), Advisory Committee's Notes (2000 amendment, effective December 1, 2000) (emphasis added). A narrow reading of the language of the amendment would lend support to Appellee's contention that the Commonwealth's right to rebut evidence of a victim's prior threats and violence is controlled by the defendant's self-serving explanation of his purpose for offering such evidence, *e.g.,* to prove his fear of the victim in support of his claim of self-defense, regardless of whether the effect of

the evidence extends beyond the scope of that purpose. In fact, the amendment to the Advisory Committee's Notes appears to apply to a circumstance where a defendant has introduced evidence of the victim's bad character to prove he acted in conformity therewith rather than to a circumstance where, as here, a defendant has introduced evidence of specific instances of misconduct which cumulatively tends to characterize the victim as a violent person. Regardless, we decline to adopt such a narrow reading of KRE 404(a)(2). Instead, we conclude that the Commonwealth's right to rebut such evidence depends not only on the purpose for which it was offered, but also on the effect of its introduction.

KRE 404(a)(2) describes two circumstances in which evidence of the victim's good character is admissible in rebuttal: (1) when the defendant introduces *character evidence* in *any criminal* case to prove that the victim acted in conformity therewith on the occasion at issue; and (2) when the defendant introduces *any evidence* in a *homicide case* to prove that the victim was the first aggressor. In the first circumstance, the evidence of the victim's bad character presumably would be in the nature of reputation or opinion, not specific instances of bad conduct. KRE 405(a). However, at least one court has held that when an abundance of testimony of specific instances of bad conduct has the cumulative effect of portraying the victim as a person of violent character, the door is opened for the prosecution to show in rebuttal "the general reputation of the deceased as a peaceable and law-abiding citizen." *Mode v. State,* 234 Ark. 46, 350 S.W.2d 675, 680 (1961), *cert. denied,* 370 U.S. 909, 82 S.Ct. 1255, 8 L.Ed.2d 403 (1962). In other words, if the same evidence that proves that the defendant had reason to fear the victim also proves that the victim was a person of violent charac-

ter who acted in conformity therewith on the occasion at issue, the prosecution can rebut the evidence of the victim's character for violence with evidence of the victim's character for peacefulness.

In the second circumstance described in KRE 404(a)(2), *any* evidence that the victim was the first aggressor, "however proved," *see* FRE 404(a) Advisory Committee Notes, will open the door for rebuttal character evidence. Commentary to KRE 404(a)(2), Evidence Rules Study Committee, Final Draft (1989) (emphasis added). If, as here, the evidence tends to prove not only Appellee's fear of the victim, but also circumstantially that the victim was the first aggressor, the Commonwealth may counter that inference with evidence of the victim's character for peacefulness. This view is supported by the Commentary to KRE 404(a)(2): "[T]he prosecution is permitted in a homicide case to introduce evidence of a victim's character for peacefulness to rebut *any evidence* ... that the victim was the initial aggressor." (Emphasis added.) Both Lawson and McCormick appear to agree. "[T]he production by the defense of *any evidence* tending to show 'that the victim was the first aggressor' opens the door to proof by the prosecution that the victim had a character trait for peacefulness." Lawson, *supra*, § 2.15, at 70 (emphasis in original). "[W]henever the accused claims self-defense and offers *any* type of evidence that the deceased was the first aggressor, the government may reply with evidence of the peaceable character of the deceased." *McCormick on Evidence* § 193 (J. Strong ed., 5th ed.1999) (emphasis in original).

Appellee denies ever claiming that Endicott was the first aggressor. His theory is that he drew his weapon because of his fear of Endicott and that he shot Endicott in self-defense when Endicott attempted to take the weapon from him. However,

in addition to introducing evidence of Endicott's alleged prior history of threats and violence, Appellee testified that just prior to the shooting, Endicott had forcibly removed him from his apartment, shoved him into the passenger compartment of Brewer's pickup truck, threatened to kill him, and struck him in the sternum with his fist. Regardless of how Appellee characterizes the purpose of his evidence of Endicott's prior history of threats and violence, this additional evidence of aggression directed by Endicott against him immediately prior to the shooting was sufficient "first aggressor" evidence to authorize rebuttal evidence of Endicott's character for peacefulness.

### III. PENALTY PHASE EVIDENCE.

The Court of Appeals also found error in the Commonwealth's admission during the penalty phase of the trial of evidence with respect to "good time credit," KRS 197.045, and "credit for time served," KRS 532.120(3). Subsequent to the rendition of the Court of Appeals' opinion, we held in *Cornelison v. Commonwealth*, Ky., 990 S.W.2d 609 (1999) that the factors enumerated in KRS 532.055(2)(a) were illustrative rather than exhaustive, and that evidence as to good time credit was admissible during the penalty phase of a felony trial.

> The evidence with respect to potential good time credit is no less relevant nor more speculative than evidence with respect to parole eligibility. Neither constitutes a guarantee of a reduction of the sentence; but both potentially affect the actual duration of a period of imprisonment imposed by the jury against the defendant.

*Id.* at 611. Evidence of credit for time served is just as relevant as, and certainly less speculative than, parole eligibility or potential good time credit. As reiterated

in *Cornelison,* the policy embodied in the "truth-in-sentencing" statute, KRS 532.055, is to provide full and accurate information to the sentencing jury, *id.* at 610 (citing *Offutt v. Commonwealth,* Ky., 799 S.W.2d 815, 817 (1990) and *Huff v. Commonwealth,* Ky., 763 S.W.2d 106 (1988)), and to insure that the sentencing jury is well informed about all pertinent information relating to the person on trial, *id.* (citing *Commonwealth v. Bass,* Ky., 777 S.W.2d 233, 234 (1989)). The jury was entitled to know when it was deliberating Appellee's sentence not only how much of the sentence he was likely to serve, but also how much of it he had already served.

## IV. EVIDENCE OF OTHER MISCONDUCT.

■ Appellee's father, Jacob Higgs, testified for the defense that two days before the shooting he had a conversation with Appellee in which Appellee denied stealing Endicott's property; and that he told Appellee that "things were being blamed on him" and that he should always have witnesses with him wherever he went so that he could prove "that he didn't do it." In response to inquiry on cross-examination, Mr. Higgs admitted that in the summer of 1995, he, too, had accused Appellee of stealing property from him. Although Mr. Higgs did not say that Appellee actually stole his property, the clear implication of his testimony was that he believed Appellee had stolen his property. Appellee asserts in his cross-appeal that this evidence violated the KRE 404(b) proscription against introducing evidence of other crimes, wrongs or acts. We, however, agree with the Court of Appeals that this evidence was admissible to impeach the credibility of Jacob Higgs's testimony.

■ The effect of Mr. Higgs's direct testimony was that he did not believe Appellee was a thief, which amounted to an opinion of Appellee's good character for honesty. KRE 405(a). (Mr. Higgs testified prior to Appellee's own testimony in which Appellee admitted that he was a thief.) The effect of the information elicited on cross-examination was that, at least as recently as the summer of 1995, he did believe Appellee was a thief. Having offered an opinion of Appellee's good character for honesty, Mr. Higgs opened the door for cross-examination impeaching the credibility of that opinion, even if the impeachment took the form of a specific instance of Appellee's bad conduct relevant to that character trait. KRE 405(b); *United States v. Castillo,* 181 F.3d 1129, 1132 (9th Cir.1999) (defendant's testimonial portrayal of himself as a "paragon of virtue" and "quintessential model citizen" opened the door for admission of otherwise inadmissible evidence of his prior criminal acts), *cert. denied,* —— U.S. ——, 121 S.Ct. 1502, 149 L.Ed.2d 386 (2001); *United States v. Jansen,* 475 F.2d 312, 315–16 (7th Cir.1973) (defendant's testimony that he had never been convicted of a crime, an impermissible form of evidence of good character, opened the door for introduction of otherwise inadmissible evidence that he had been convicted of several misdemeanors), *cert. denied,* 414 U.S. 826, 94 S.Ct. 130, 38 L.Ed.2d 59 (1973). This has long been the rule in Kentucky, even prior to the adoption of the Kentucky Rules of Evidence. *E.g., Taylor v. Commonwealth,* Ky., 449 S.W.2d 208, 211 (1969) (witness's testimony that the defendant was a peaceful person who had never been in trouble with the law opened the door for proof of the defendant's bad reputation for peacefulness).

Thus, a Defendant may try, whether or not he takes the stand, to cast doubt on the probability of guilt by showing that some in his community believe him to be truthful and honest. But a Defendant pays a price for attempting to show his

good repute by opening "the entire subject which the law has kept closed for his benefit and [thus making] ... himself vulnerable where the law otherwise shields him."

*Shimon v. United States*, 352 F.2d 449, 453 (D.C.Cir.1965) (quoting *Michelson v. United States*, 335 U.S. 469, 479, 69 S.Ct. 213, 220, 93 L.Ed. 168 (1948)). As noted in *Shimon*, the target of this kind of impeachment evidence is the credibility of the character witness, not the prior conduct of the defendant. 352 F.2d at 454. Upon request, the jury should be admonished as to the limited effect to be given to such evidence. *Kelly v. Commonwealth*, 259 Ky. 770, 83 S.W.2d 489, 490 (1935); *McDaniel v.. Commonwealth*, 185 Ky. 608, 215 S.W. 544, 548 (1919).

Nor was it an abuse of discretion to fail to exclude this evidence under KRE 403. *Commonwealth v. English*, Ky., 993 S.W.2d 941, 945 (1999). Appellee was charged with murder, not theft; and he, himself, subsequently admitted he was a thief. Thus, except with respect to its impeachment value, the prejudicial effect of this evidence was slight. Certainly, it cannot be said that its probative value was substantially outweighed by its prejudicial effect.

\* \* \* \* \* \*

Accordingly, we reverse the Court of Appeals with respect to the Commonwealth's direct appeal and affirm with respect to Appellee's cross-appeal, and reinstate the judgment of conviction and sentence imposed by the Jefferson Circuit Court.

LAMBERT, C.J.; GRAVES, JOHNSTONE, KELLER and WINTERSHEIMER, JJ., concur.

STUMBO, J., dissents by separate opinion.

STUMBO, Justice, dissenting.

Respectfully, I must dissent from that portion of the majority opinion which reinstates the verdict herein. I would hold that the trial court erroneously permitted the introduction of evidence of Endicott's character trait of peacefulness in rebuttal to Higgs' evidence of specific prior threats and violence by Endicott. As stated in Lawson, the introduction of evidence offered to show a fear of the victim by the accused "does not ... open the door for the prosecution to introduce evidence of the character of the alleged victim for peacefulness." Lawson, *Kentucky Evidence Law Handbook*, § 2.15, at 70–71 (3d ed.1993). The defense in this case was that Higgs acted in self-defense, not because Endicott was the initial aggressor, but because Higgs was afraid of Endicott, who had previously threatened him. Thus, it was impermissible for the Commonwealth to introduce evidence of Endicott's peacefulness to rebut evidence that he was the first aggressor, the ground upon which the trial court allowed introduction of the evidence on rebuttal.

"[R]ebuttal evidence is competent only when it is evidence in denial of some affirmative case or fact which the adverse party has attempted to prove, or repels or explains it." *Keene v. Commonwealth*, Ky. App., 307 Ky. 308, 210 S.W.2d 926, 928 (1948) (overruled on other grounds). Evidence of Endicott's peacefulness did not meet that standard because the defense did not launch an attack on Endicott's character, but limited itself to establishing Higgs' fear of the victim and his belief that the victim would kill him or inflict serious physical injury. Higgs is entitled to a new trial.