**Steven R. COX, Appellant**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

**No. 2011–SC–000656–MR.**

Supreme Court of Kentucky.

May 23, 2013.

Brandon Neil Jewell, Assistant Public Advocate, for Appellant.

Jack Conway, Attorney General of Kentucky, James Coleman Shackelford, Assistant Attorney General, for Appellee.

Opinion of the Court by Justice ABRAMSON.

Steven Cox appeals as of right from a Judgment of the Hardin Circuit Court sentencing him as a second-degree persistent felon to a twenty-year term of imprisonment for the crime of first-degree possession of a controlled substance, firearm enhanced, in violation of Kentucky Revised Statute (KRS) 218A.1415 and KRS 218A.992, and to a concurrent ten-year term of imprisonment for the crime of possession of a handgun by a convicted felon, as prohibited by KRS 527.040(2). Cox maintains that a parole officer's incomplete and inaccurate testimony regarding sentence credits potentially available to parolees rendered the penalty phase of his trial fundamentally unfair. We disagree and affirm Cox's sentence.

## RELEVANT FACTS

In the summer of 2008, an officer of the Radcliff Police Department found cocaine, a stun-gun, and a loaded semi-automatic pistol in Cox's automobile. Cox was then only twenty-two years old. In short order a Hardin County Grand Jury indicted Cox, already a convicted felon, for, among other things, illegal possession of a controlled substance and illegal possession of a handgun. Following a jury trial in May 2009, Cox was convicted of those offenses and, in accord with the jury's recommendation,

he was sentenced to twenty years in prison—ten years for each offense, the two sentences to be served consecutively. During the penalty phase of Cox's trial, the Commonwealth argued that Cox's five prior misdemeanor offenses—offenses which included carrying a concealed deadly weapon, harassment with physical contact, and fourth-degree assault—together with his prior felony conviction for second-degree assault—striking the victim with a handgun—demonstrated his readiness to engage in increasingly serious forms of violence. Moreover, Cox had not been deterred by lesser forms of criminal sanction—he was on felony probation at the time of the current offenses. Given these factors, the prosecutor argued that a significant penalty, twenty years, would be an appropriate sentence. The jury agreed.

Because the Commonwealth had failed to introduce properly certified copies of Cox's prior misdemeanor convictions, and because of the strong probability that those earlier convictions had factored into the jury's sentencing decision, this Court vacated Cox's sentence and remanded for a new penalty phase trial. *Cox v. Commonwealth,* 2010 WL 3377752 (Ky.2010). At that second trial, the Commonwealth introduced valid evidence of all of Cox's prior offenses and once again argued that Cox's distressing history—eight offenses by the time he was twenty-two, the increasingly violent nature of those offenses including the presence of handguns, and the rapid recurrence of offenses in utter disregard of prior sanctions and probations—cried out for a stiff penalty. Again the prosecutor urged the jury to impose a twenty-year sentence, and again the jury responded by returning a verdict of twenty years in prison.

Now, because the jury was told by an experienced parole officer, correctly for

the most part and without objection by Cox, that if Cox were to be granted parole the duration of that parole would likely turn out to be less than the nominal length of his remaining sentence, Cox contends that his sentencing was "manifestly unjust" pursuant to Kentucky Rule of Criminal Procedure (RCr) 10.26. He insists that this matter should therefore be remanded for yet a third jury to pass upon the sentence for his latest crime. Because we are convinced that, even if it was not as clear as it might have been, the parole officer's testimony did not amount to palpable error, we reject Cox's contention and affirm.

### ANALYSIS

At Cox's second sentencing trial, a parole officer was asked to explain how long a person who had been sentenced to ten years in prison and who had been granted parole after having served twenty percent (20%) of that sentence, or two years, would be on parole. The officer testified that while "theoretically" a person remained on parole for the duration of his sentence—eight years in the proposed hypothetical—the actual period of parole was likely to be less than that.

> *Prosecutor.* If a person is released from the prison system on parole, you said you supervise them, is that correct?
>
> *Officer.* Yes.
>
> *Prosecutor.* How are they being supervised by you? How long is their parole period?
>
> *Officer.* It depends. Their parole period will be until the time that their sentence would expire. We will supervise them for a certain period of time depending on their conduct. Whether or not they're supervised for the entire range of time, or based on their conduct or performance, we may grant them what we call "inactive status," where they

would still be under the conditions of probation or parole. However, they wouldn't have to report to us on a regular basis.

> *Prosecutor.* Okay. You told us on probation a person is supervised on probation for five years; on parole, is it a set limit like that?
>
> *Officer.* No, it depends on what the sentence length is.
>
> *Prosecutor.* If, for example, in this case, if Mr. Cox got a ten-year sentence and after two years was placed on parole, how long would he be on parole for?
>
> *Officer.* Theoretically, he would be on parole for eight years.
>
> *Prosecutor.* When you say "theoretically," what do you mean by that?
>
> *Officer.* Individuals that are granted parole are typically granted a certain amount of time—what we call "street time"—where, and it's time taken away from their sentence, off that ten-year sentence. They'll get a reduction in time just for seeing a probation and parole officer for the first time. As long as that individual does not receive a new felony conviction or does not abscond supervision, then that time will continue to count where it will be a reduction in sentence.
>
> *Prosecutor.* So, while they're—as they're going on, the period is shortened.
>
> *Officer.* Yes, and that's determined by the parole board, not by our office.

Cox maintains that the officer's references to "time depending on their conduct" to "time taken away from their sentence," to "a reduction in time just for seeing a probation and parole officer for the first time," and to the fact that as parole goes on "the period is shortened," are all misleading for a number of reasons. First, Cox complains that "street time," at least as that term is commonly understood, *i.e.,*

as sentence credit for the time spent on parole, does not "reduce" or "shorten" or "take time away from" a sentence. The hypothetical eight-year parole period would remain an eight-year period, that is, even if the time spent on parole counted toward the service of the parolee's sentence.

Cox asserts, moreover, that sentence credits earned while on parole—not only the service credit but any credit in addition thereto—remain conditional and subject to revocation, and so only potentially "reduce" the parolee's sentence until all the conditions are fulfilled. Since, according to Cox, the officer's testimony did not make clear the conditional nature of a parolee's sentence "reduction" that testimony was misleading.

The testimony was also misleading, in Cox's view, because it failed to specify the extent to which a sentence could be "reduced" and so left the jury free to speculate. On appeal Cox maintains that the jury might think he could receive "a seven-year sentence reduction just for seeing a probation and parole officer for the first time.'" Although we agree with Cox that the officer's testimony was not as clear as it might have been, we do not agree that it was misleading or that it amounted to palpable error.

Under the truth-in-sentencing statute, KRS 532.055, we have upheld the introduction during the penalty phase of a criminal trial of testimony concerning parole eligibility and the possible effects of sentence credits. *Commonwealth v. Higgs*, 59 S.W.3d 886 (Ky.2001) (citing *Cornelison v. Commonwealth*, 990 S.W.2d 609 (Ky. 1999)). As Cox notes, however, we have also insisted that such testimony accurately reflect the law. *Offutt v. Commonwealth*, 799 S.W.2d 815 (Ky.1990) (vacating sentence because, among other reasons, parole eligibility under the violent offender

statute was misstated); *Robinson v. Commonwealth*, 181 S.W.3d 30 (Ky.2005) (vacating sentence because the jury was erroneously told that a prisoner's good time credit could reduce his minimum period of parole ineligibility). Cox's contrary assertions notwithstanding, we are convinced that the parole officer's testimony here, though unartful perhaps, was not so incomplete as to be misleading.

Prison inmates, of course, receive a service credit toward the completion of their sentences for the time they have spent incarcerated. Additionally, under KRS 197.045 inmates meeting statutory qualifications can earn sentence credits in other ways, including a credit for good behavior, the so-called good time credit. Since 2009, parolees have also been awarded service credit for the time spent on parole. KRS 439.344 provides, with exceptions not pertinent here, that "[t]he period of time spent on parole shall count as a part of the prisoner's sentence." Also amended in 2009, KRS 439.354 provides in pertinent part that

> [u]nless ordered earlier by the [parole] board, a final discharge [from parole] shall be issued when the prisoner has been out of prison on parole a sufficient period of time to have been eligible for discharge from prison by minimum expiration of sentence had he or she not been paroled.

In *Conway v. Thompson*, 300 S.W.3d 152 (Ky.2009), we explained that, inasmuch as an incarcerated person's "minimum expiration" date is determined by subtracting good time credit, as provided for in KRS 197.045, from his adjusted maximum expiration date, KRS 439.354 necessarily implies that in addition to the KRS 439.344 service credit for time spent on parole, a parolee is eligible for a sentence adjustment analogous to the "good time" credit provided inmates. 300 S.W.3d at 175 (con-

struing identical language in a 2008, temporary version of this legislation). In 2011, after our decision in *Conway v. Thompson*, the General Assembly enacted H.B. 463. That Act created a new statutory section, now codified at KRS 439.345, which provides:

> (1) A supervised individual on parole shall receive compliance credits to be applied toward the individual's sentence, if the paroled individual does all of the following:
>
>> (a) Fulfills the terms of his or her case plan;
>>
>> (b) Has no new arrests; and
>>
>> (c) Makes scheduled monthly payments for restitution.
>
> (2) The department shall promulgate administrative regulations for the awarding of earned compliance credits to a supervised individual who is on parole.[1]

Thus, when asked how long a person paroled after having served two years of a ten-year sentence could look forward to being on parole, the parole officer had to account not only for the KRS 439.344 service credit, which, as Cox notes, would not lessen the eight-year remainder of the ten-year sentence, but he had to account as well for the possibility of good time credits earned during the two years of incarceration and brought with the parolee to parole, for the possibility of a "credit" imputed to the parolee pursuant to KRS 439.354, and for the possibility of compliance credits pursuant to KRS 439.345. All of these latter credits would tend, as the officer testified, to reduce the "theoretical" eight years of parole. It is true that the officer did not address these latter possibilities separately, as he might have done, but rather conflated them under a generalized

notion of "street time" with casual references to "conduct" and "seeing a probation and parole officer." Nor did the officer specify either the conditions a parolee must meet to be eligible for these additional credits or the amount of sentence reduction the credits make possible. As far as it went, however, the officer's testimony to the effect that, subject to the parole board's discretion, the period a person spends on parole is apt to be less than the theoretical maximum was correct and it was pertinent to the jury's task.

Could the officer's testimony have been more detailed? Assuredly it could have been, and probably it should have been, but Cox neither objected to the lack of detail nor asked the officer for elaboration. Certainly, an objection would have provided the opportunity for a fuller explanation of the relevant credits and the officer's terminology. That brings us to the question of palpable error.

To entitle a defendant to relief, of course, an unpreserved error must have been palpable, and to be deemed palpable the error must have resulted in "manifest injustice." RCr 10.26. Attempting to clarify this standard in *Martin v. Commonwealth*, 207 S.W.3d 1 (Ky.2006), we explained that an error cannot have been palpable unless it *probably*, not just possibly, affected the outcome of the proceeding, or unless it so fundamentally tainted the proceeding as to "threaten a defendant's entitlement to due process of law."

■ Cox's due process rights were not violated. As noted above, we have held that testimony during the penalty phase of trial regarding the potential effect of parole and sentence credits on a defendant's sentence comports with the aims of the truth-in-sentencing statute and is not un-

---

1. The question has not been raised, and we do not consider how the compliance credit of KRS 439.345 may bear upon or relate to the sentence adjustment implicit in KRS 439.354.

fair. *Cornelison v. Commonwealth,* 990 S.W.2d at 609. Here, the parole officer's testimony, while less than detailed, was not a denial of due process.

 Nor was Cox's sentence "probably" affected by the parole officer's brief testimony regarding credits earned on parole. As noted above, at the penalty phase of both of Cox's trials, the Commonwealth's proof and argument focused on Cox's numerous prior crimes; the increasingly violent nature of those crimes, including Cox's repeatedly having armed himself with a handgun; and the frequency of those crimes—some eight crimes in about four years—indicative, the Commonwealth argued, of Cox's unresponsiveness to less severe sanctions. Indeed, the parole officer's twenty-five minutes of direct testimony focused largely on Cox's prior offenses, with only two minutes of testimony regarding credits while on parole. In its closing argument in this case, the Commonwealth did *not* refer at all to "good time" or to "street time" or to any potential credit against Cox's sentence, and *it referred to parole only once,* briefly, noting that if Cox were given a lengthy sentence he would for that period at least be subject to the oversight of a parole officer, which would be better than nothing. The parole officer's "street time" and parole credit testimony simply did not figure in the prosecutor's argument. Given the focus on Cox's criminal history, the parole testimony, even if that testimony was not as thorough as it might have been, is not something that "probably" affected the jury's recommendation, and it most assuredly did not render Cox's sentencing, a twenty-year sentence reached independently by two separate juries, manifestly unjust under RCr 10.26.

Although we find no palpable error on these facts, as this case illustrates, the bar should be attuned to the fact that the penalty phase of a criminal trial is the opportunity to provide the jury with helpful information relevant to sentencing. Jargon, such as "street time," may mean different things to people who work in the criminal justice system and it may mean nothing, without further explanation, to a jury of lay people. Careful attention to the content of a parole officer's testimony will assure that any concepts which are raised, *e.g.,* parole eligibility, parole credits and sentence reduction, are adequately explained in a straight-forward manner that the jury can understand.

### CONCLUSION

In sum, Cox was fairly sentenced. To the extent, if any, that the parole officer's lack of detail about credits against a parolee's sentence could be deemed erroneous, the error was not palpable and so does not entitle Cox to relief. Accordingly, we hereby affirm the Judgment of the Hardin Circuit Court.

All sitting. MINTON, C.J.; CUNNINGHAM, KELLER, NOBLE, and VENTERS, JJ., concur. SCOTT, J., concurs in result only.